THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BARNEY MELNICK, Plaintiff in Error.

*Opinion filed October 24, 1916.*

1. CRIMINAL LAW—*whether false testimony was material is a question of law for the court.* In a perjury trial for giving false testimony, the question whether the false testimony was as to matters material to the issues in the case then on trial is° one of law for the court.

2. SAME—*when instruction is properly refused.* On a trial for perjury in giving false testimony in a former trial for larceny and receiving stolen property, the substance of which was a denial of the witness' participation in the crime or having knowledge that the goods were stolen, an instruction is properly refused which is prefaced by the statement that the question whether or not the defendant was guilty of larceny or of receiving the stolen property had nothing to do with the perjury case.

3. SAME—*when the right to object to variance is waived.* In a perjury trial for giving false testimony on the trial of the defendant for receiving stolen property an alleged variance between the indictments in the two cases with respect to the allegation of the value of the goods stolen is waived, where it is not made until the motion for a new trial.

4. SAME—*evidence of reputation for truth may be given in perjury case.* On a trial for perjury, where the defendant testifies in his own behalf and denies the testimony as to his guilt, the People may introduce evidence tending to show that his reputation for truth and veracity is bad in the neighborhood in which he lives, and it is not necessary that evidence be first given tending to show that° such reputation is good.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. GEORGE F. BARRETT, Judge, presiding.

ROMAN G. LEWIS, for plaintiff in error.

P. J. LUCEY, Attorney General, MACLAY HOYNE, State's Attorney, and A. R. ROY, (EDWARD E. WILSON, and EDWIN J. RABER, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

At the May term of the criminal court of Cook county, 1913, the plaintiff in error and Israel Tecotczky and Morris Cohen were jointly indicted in a count for larceny and also in a count for receiving stolen property knowing it to be stolen. The indictment charged that the property stolen or unlawfully received by the defendants was one lot of furs, consisting of muffs, collars, scarfs, coats and skins, the prop- erty of Hyman Kinzelberg, each article being specifically described and valued in the indictment, the aggregate value therein amounting to $6122. The instant case grew out of the trial of the case for larceny and receiving stolen prop- erty, and the indictment was returned at the March term, 1915. It charged in one count, in substance, that plaintiff in error, while upon trial upon said former indictment, was himself duly sworn in that case by the clerk of that court, and falsely, knowingly, corruptly, wickedly, unlawfully and feloniously testified that he had not purchased nor had any dealings with the said Tecotczky and Cohen with reference to the purchase of any furs set forth in said former indict- ment, in the month of November or December, 1912; that he did not go to Kansas City, Missouri, in December, 1912, with said Morris Cohen; that he did not go to Kansas City, Missouri, in December, 1912; that he did not write his name on the register of the Hotel DeMore, in Kansas City, Missouri, in 1912; that he had not stopped at the Hotel DeMore in 1912; that he never gave said Morris

Cohen any money on the train while said Cohen accompanied him, and that he, Barney Melnick, did not have any knowledge about the furs of said Hyman Kinzelberg; that it then and there became material to the issues in said former case whether or not plaintiff in error did do the several things aforesaid which he so falsely, willfully, corruptly and feloniously swore he did not do. On his trial he was convicted and sentenced to the penitentiary, after motions for new trial and in arrest of judgment were overruled. This writ of error is prosecuted by Melnick to reverse the judgment.

It is first argued by plaintiff in error that there is no evidence in the record tending to prove any assignment of perjury in said indictment, and a reversal of the judgment is asked on that ground. It was by the People's evidence proved that plaintiff in error did testify, on oath administered by the clerk of said court in the former trial, to the very matters and things which are charged to be false, etc., and the giving of which testimony is charged to be perjury on his part. It is not denied by his counsel that he so testified, but their contention is that the testimony was not shown to be willfully and corruptly false. All of the assignments of perjury were proved, if the testimony of Morris Cohen is to be believed, who plead guilty to the former indictment and afterwards withdrew his plea and the indictment was dismissed as to him. The third and last assignments of perjury are proved clearly, conclusively and beyond all reasonable doubt by the People's evidence when considered alone, for it is abundantly shown by the evidence of the People that plaintiff in error went to Kansas City, Missouri, just before Christmas in 1912, and sold some or all of the very same furs that were stolen to one Joseph L. Greenstone, manager of a cloak and suit store in that city, and that plaintiff in error knew that they had been stolen from Hyman Kinzelberg. Greenstone testified that he had known plaintiff in error sixteen or seventeen years,

and that he saw him at Chicago in the place of Michael Tauber & Co., auctioneers, in December, 1912; that he there approached witness and said to him that he used to sell witness merchandise and asked him what he was doing in Tauber's, and on replying that he was buying merchandise at the sale, plaintiff in error told him he bought and sold merchandise and asked if witness would be interested in a job of furs. Receiving a favorable reply, plaintiff in error told him he had shipped a case of furs to M. Goldberg, Denver, Colorado, C. O. D., and had the bill of lading but the man had not produced the money, and asked witness to remain over in Chicago until he could get the furs back. Witness told him he could not wait. Plaintiff in error then suggested that witness give him a check for $500 for the furs and that he would have them shipped to him at Kansas City, and if they were satisfactory he would cash the check and if not he would return it to witness or witness could stop payment on it; that the trade was so made, and that witness left that night for Kansas City and arrived there the next morning and wired plaintiff in error not to deposit the check,—that he had stopped payment on it; that plaintiff in error came the next day to Kansas City and returned the check but sent to Denver for the furs; that an expressman brought the furs over to witness' place of business and witness bought them for $500 and offered him a check, which he refused. Witness then offered to borrow money from a pawnbroker, as the banks were closed, if plaintiff in error would pay the $10 charge for interest, which offer was accepted by plaintiff in error. Witness asked him to give a bill of sale, and he replied that he could not write. Plaintiff in error again called on witness about July, 1913, in Kansas City, and told him he had called witness on the long distance telephone from Tauber's but that witness was not in town. He then asked witness if anyone had inquired about the fur transaction, and on being told that no one had, he asked the witness to say he did not buy anything

from him, if any inquiry should be made, because he was in trouble; that he again called upon witness in Kansas City in March, 1915, and again about ten days after witness had testified in this case before the grand jury, and told witness he did not have to go to Chicago to testify, and witness replied that he sold witness a lot of stolen furs and that witness wanted to clear his name. Plaintiff in error then suggested that witness could fail to identify him; that he (Melnick) had headed a witness off from Duluth who was coming to testify against him and that the man never came. Witness then identified the People's exhibit of furs in this case as part of his purchase from plaintiff in error, and on cross-examination located the date he purchased the furs from plaintiff in error in Kansas City as being in December, 1912, just prior to Christmas.

The witness Greenstone was corroborated by Hyman Kinzelberg, who identified the People's fur exhibit and the goods so purchased by Greenstone as the property stolen from him, and testified that shortly after the goods were stolen from him he went to plaintiff in error and asked him to help him get his furs; that plaintiff in error asked him who sent him, and that he replied: "It don't make any difference; they told me you had possession of the goods; if you want to help me out I could help you out." The plaintiff in error replied: "My case is in the Supreme Court now; they will reverse it in the Supreme Court and it will cost me to fight the thing; I will give you $250 in cash and $250 in notes, and I'll see that Cohen does something, too; you would have got your furs back if your wife had not had such a big mouth; treat me right, Kinzelberg, and I'll treat you right."

Cohen testified in corroboration of Greenstone that Tecotczky wanted to borrow $300 from him and that he refused to lend it to him without security; that the next morning plaintiff in error came with Tecotczky and told witness that Tecotczky was good as gold and that if he

did not pay the $300 he would pay it to him, and that he
then loaned him the money in cash after they refused to
take his check; that afterwards, the money not being paid,
he asked plaintiff in error for the money, and that he told
witness the goods had been shipped to another city,—Den-
ver, he thought,—and that he got a bill of lading, which
he showed witness; that plaintiff in error afterward showed
him a check for $500 and offered it to witness in payment
of the $300 if he would pay him $200 difference in money;
that next day plaintiff in error showed him a telegram stat-
ing that the check must not be cashed, and that plaintiff in
error then asked him to go with him to Kansas City and
he would then get his money; that they left for Kansas
City that night, December 22, 1912, and got to Kansas City
the next day and stopped at a hotel the name of which he
had forgotten; that he (witness) signed his name on the
hotel register and thinks that Melnick signed his name there
too, and that he thinks he saw him sign it.  He identified
his own signature in a hotel register purporting to be that
of the Hotel DeMore, of Kansas City, Missouri, on which
appeared the names M. Cohen and B. Melnick, the latter
name written just after the former.  He also testified that
they returned together to Chicago, as he remembers, on
the night of December 24, 1912, and that plaintiff in error
paid him $250 of his money on the train as they went back
to Chicago.  He could not remember the name on the check
nor on the bill of lading.

Nathan Steinberg testified that he was a convict at Joliet,
and that he, with others, burglarized Kinzelberg's place in
the winter of 1912 or 1913 and stole therefrom some furs,—
"scarfs, muffs, everything,"—and sold them to Tecotczky,
"a fence—buying stolen property."

Michael Tauber, an auctioneer, testified that Greenstone
was in his place of business December, 1912, but does not
remember if he and Melnick were there together.  He also
testified that Melnick came to his place of business and asked

for Greenstone's address and that he gave it to him, and that Melnick asked permission to use his phone to call up Greenstone on the long distance.

Elias Tobias testified that he was with Kinzelberg when plaintiff in error made the statement that he would pay Kinzelberg $250 in money and $250 in notes and would see Cohen and that he would do as well by him, and also that plaintiff in error said to Kinzelberg, "If your wife had not such a bad mouth you would have had your furs long ago."

Alvin Strauss testified that as check clerk for the Burlington Railroad Company he had charge of shipping goods on the cars to their destination. He identified exhibit "5" as the bill of lading, which he states was made in December, 1912, and was a receipt for goods shipped to Denver, Colorado, marked as dry goods.

Frank McClintock testified that he lived in Denver, Colorado, and is assistant cashier of the Burlington Railroad Company. He identified the bill of lading, also, and testified that he received the case of goods on December 12, 1912, and that they remained there until December 18, 1912; that then a United States Express driver presented the bill of lading, paid the charges and took the goods out and gave a receipt for the same. The body of the bill of lading from the Burlington reads thus: "Received of M. Golden, 12-6-1912, consignee, M. Goldberg, Denver, Colorado, 2 cases of dry goods, weight 385 pounds."

Plaintiff in error by his testimony made a general denial of the testimony of the People's witnesses intended to incriminate him, and sought to establish an alibi by his own testimony and the testimony of a number of his friends and relatives. The substance of their testimony on the question of an alibi is that his mother died during the month of December, 1912, and that in accordance with the religious custom of the Jewish race plaintiff in error and his said witnesses met together at his mother's house after she died and prayed for several nights. Many of these witnesses

could not even fix the date of the death of his mother nor
when they met the plaintiff in error after her death.  The
testimony, therefore, as to the alibi is not so convincing as
is the testimony for the People.  Besides, plaintiff in error
was successfully impeached by a number of witnesses who
testified that his reputation for truth and veracity was bad
in the neighborhood where he lived and that from that
reputation they would not believe him on oath.  It needs no
argument to show that the verdict of the jury was clearly
supported by the evidence, which in our opinion makes a
very strong case of guilt against plaintiff in error, and we
do not see how any other verdict could have confidently
been counted on by him.

It is also argued by plaintiff in error that the matters
so falsely sworn to, as alleged in the indictment, were not
proven to be material to the issues on trial in the former
case.  Under that indictment it was necessary to prove that
the goods were received by plaintiff in error knowing them
to be stolen property.  This is abundantly proved by the
testimony of Greenstone and others; and the manner in
which he disposed of the property by first shipping it in
an assumed name to Goldberg, and his cunning transactions
in regard to it generally, show a studied method by him
of handling and dealing with the goods so as to leave no
trace of himself in the transactions, as nearly as was pos-
sible.  His conversations with Kinzelberg, Greenstone and
Cohen all show guilty knowledge of the fact that the goods
were Kinzelberg's and that he had positive knowledge that
they were stolen.  The evidence itself discloses clearly that
it was very material in the first trial to prove whether or
not he had any knowledge about the furs of Kinzelberg.
It was also a very material point in the case in the former
trial as to whether or not in December, 1912, he went to
Kansas City, Missouri, for the reason that the truth of the
story of Greenstone depended upon that very fact,—a fact
which plaintiff in error denied on oath.  If he was not in

Kansas City at any time during 1912, as he testified in his own defense, Greenstone's story was false, and if he was there that fact corroborated Greenstone. It was not necessary to prove all the assignments of perjury in order to establish his guilt, but only sufficient to prove any one or more of them as charged in the indictment and that those matters were material to the issues in the former case.

The giving of the People's instruction No. 2, in substance telling the jury that the matters set forth in the second assignment of perjury, as well as those in the other assignments, were material to the issues in the former case, was not error. It was a question of law for the court to settle as to whether or not the false testimony was material to the issues in the former case. *Wilkinson* v. *People,* 226 Ill. 135.

Plaintiff in error's instruction No. 7 was properly refused by the court. It is prefaced by the proposition that the question whether or not he received the goods in question or committed larceny of the goods in question has nothing to do with the case. It is true that he was not on trial for either one of those offenses, but it was very material to show that he received the goods in question in order to show that he did have knowledge concerning the furs of said Hyman Kinzelberg. It would have been error for the court to have given said instruction.

The claim of plaintiff in error that there was a variance between the allegations in the former indictment and those in the indictment in this case comes too late in this court. The variations are, in substance, that in the former indictment it was charged that the value of the goods received was $6122, while in this indictment it is charged that the value alleged in the former indictment was $6980, and there are perhaps some other variations in minor matters. The variations were not pointed out to the court until after verdict and on a motion for new trial. It was the duty of plaintiff in error to point out such variations during the taking of

the evidence so that the trial court could pass upon them at that time. Unless such practice is followed the trial court would not be called upon to grant a new trial by reason of the variance then pointed out, unless it would be under circumstances clearly shown to be prejudicial to the defendant on trial. That is not the case here. The variations are merely technical and do not affect the merits of the case. For his failure to call the attention of the court to the variance before the evidence closed and to move to exclude the evidence, the plaintiff in error should be deemed to have waived all right to contend for such a variance in this court. *Libby, McNeill & Libby* v. *Scherman,* 146 Ill. 540; *Greene* v. *People,* 182 id. 278.

The claim of plaintiff in error that the court committed reversible error in admitting the evidence impeaching the plaintiff in error by showing his general reputation for truth and veracity in the neighborhood in which he resides is also without merit. It is elementary that where any witness' testimony, including parties to the suit, is offered on the trial of a cause, civil or criminal, any such witness may be impeached by showing his general reputation for truth and veracity in the neighborhood in which he lives to be bad; and this is true whether evidence has been first given to sustain his reputation or otherwise. In fact, it is not the practice to offer witnesses to sustain the reputation of another witness for truth and veracity until it is first attacked by the party claiming that the reputation is bad, as it is presumed to be good until otherwise shown. There are, perhaps, rulings on the evidence by the court in other particulars that are technically erroneous, but after considering the whole record carefully our conclusion is that such errors were harmless and that they are not reversible errors. No reversible errors were committed by the court or by counsel for the State by way of prejudicial remarks or argument before the jury. A careful examination of the record satisfies us that plaintiff in error has had a fair and impartial

274 — 40

trial and that no other verdict could be reasonably expected under the evidence in this case and that the judgment ought to be affirmed.

The judgment of the criminal court is therefore affirmed.

*Judgment affirmed.*