## The People of the State of Illinois, Defendant in Error, v. Harry A. Dubia, Plaintiff in Error.

### Gen. No. 24,043.

1. INDICTMENT AND INFORMATION, § 78*—*when objection of variance waived.* The objection of variance between the allegations of the indictment and proof is waived where it is not raised in the trial court.

2. BANKS AND BANKING, § 64*—*when value of checks shown in criminal prosecution of banker.* In a prosecution of a banker for receiving a deposit, including checks, while knowingly insolvent, evidence *held* sufficient to show the value of the checks to be their face value.

3. CRIMINAL LAW—*when jury may determine both fine and imprisonment.* Under J. & A. ¶ 4143, providing that where punishment "shall be confinement in the penitentiary if the case is tried by a jury, the jury shall say in their verdict for what time the offender shall be confined," and J. & A. ¶ 4144, providing that when a fine is to be inflicted it shall be fixed by the jury, and J. & A. ¶ 4146, providing that "when the punishment may be either by imprisonment in the penitentiary, or by confinement in the county jail, with or without fine, if the jury will not inflict the punishment of imprisonment in the penitentiary, they shall simply find the accused guilty, and the court shall fix the time of confinement in the jail, or fine, or both, as the case may require," where a defendant may be both fined and imprisoned, the jury may determine both fine and imprisonment.

4. PARDON AND PAROLE, § 4*—*nature of indeterminate sentence.* An indeterminate sentence is for the maximum term.

5. PARDON AND PAROLE, § 4*—*necessity of duration of sentence being left indeterminate.* Under section 2 of the Act of June 25,

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

1917, relating to sentences of imprisonment, the duration of a sentence or commitment must not be fixed, but must be left indeterminate.

6. CRIMINAL LAW, § 599*—*when reversal and remandment proper.* A judgment in a criminal case will be reversed and the cause remanded to the trial court with leave to the State's Attorney to move for, and with directions to the court to enter, a proper judgment making a sentence of imprisonment general and indeterminate, where the sentence was improperly for a fixed term.

Error to the Criminal Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1918. Reversed and remanded with directions. Opinion filed March 12, 1919.

THOMAS F. DONOVAN and JOHN S. HUMMER, for plaintiff in error.

MACLAY HOYNE, EDWIN J. RABER, GROVER C. NIEMEYER and EDWARD E. WILSON, for defendant in error.

MR. JUSTICE TAYLOR delivered the opinion of the court.

The defendant, Harry A. Dubia, was indicted, charged with doing a banking business and receiving a deposit on September 21, 1916, at a time when he was and knew that he was insolvent. He pleaded not guilty. The jury brought in a verdict finding him guilty as charged in the indictment and fixing his punishment at imprisonment in the penitentiary for 3 years, and a fine of $805. This writ of error is prosecuted for a reversal of that conviction.

The evidence showed that the defendant conducted a private bank at 2007 Blue Island Ave., in the City of Chicago, for about 20 years; that on September 21, 1916, he voluntarily closed his bank and went into bankruptcy, the Central Trust Company being appointed receiver. At 2:30 p. m., just prior to the closing of the bank, Joe Lory deposited with the receiving teller at the defendant's bank the following:   Cur-

rency $225, United States money; gold $10; silver $0.91, and various checks of the value of $166.72, making a total deposit of $402.63.

It was admitted in the course of the oral argument before us, by counsel for the plaintiff in error—and the evidence obviously justifies the admission—that at the time of the deposit in question the defendant was insolvent and had knowledge of that fact.

In the brief of counsel for the defendant it is claimed: First, that there was a variance between the allegations and the proof. Second, that in the indictment against the plaintiff for receiving money, checks and other valuable things, when insolvent, the value of the thing embezzled must be alleged and proven in order to determine the amount of the fine to be imposed as punishment. Third, that the court alone and not the jury had authority to direct that the defendant should be imprisoned in the penitentiary. Fourth, that imprisonment in the penitentiary should have been for an indeterminate and not a fixed term.

First. As to the question of variance. We are of the opinion that the allegations in the indictment were sufficient and that the evidence sufficiently proved the allegations. Further, it is not shown that the question of variance was raised in the trial court and, of course, upon failure to raise it there it is waived. *People v. Melnick*, 274 Ill. 616; *Greene v. People*, 182 Ill. 278. In the latter case the court said: "Nothing is better settled than that the objection of variance, to be available upon appeal or writ of error, either in a civil or criminal action, must be urged in the court below, and for the reason that if it is pointed out and insisted upon it may be avoided by amendment or other proofs."

Second. As to the value of the thing embezzled: The deposit slip which the receiving teller gave the depositor, Joe Lory, on September 21, 1916, showed substantially the following: Currency $225, gold $10,

silver $0.91, checks on Chicago banks $166.72.    Total $402.63.

The books of the bank contained an account with Joe Lory showing various items of deposits and among them one of $402.63, dated September 21, 1916. One Kroll, the receiving teller and general bookkeeper for the defendant, who himself made the entry of the deposit in the books of the bank, testified that Joe Lory was a regular depositor of the bank; that as receiving teller of the bank he received from Joe Lory "cash for $225; gold for $10; silver amounting to $.91, and various checks amounting to $166.72, a total of $402.63"; that "the money went in my—in the receiving teller drawer as per custom"; that the "checks were put through their regular channels;" through the bank; that he entered the deposit in the receiving teller record under September 21, 1916; that the $225 consisted of "currency; United States currency," "bank notes of regular tender in the United States"; that the gold consisted of $10 gold coin of the United States; that the silver was "silver coin of the United States"; that he made an entry in the deposit book of Joe Lory on September 21, 1916, as follows: "September 21, $402.63"; that he made all the entries referred to in the regular course of business as receiving teller for the bank, and that the books of the bank show that the balance of Joe Lory on September 21, 1916, at the close of business, after crediting him with a deposit of $402.63, was $589.31.

In the schedule filed by the defendant on November 8, 1916, in the District Court in his bankruptcy proceedings, there is set forth the following item: "Joe Lory * * * balance of checking deposit in bank $589.21." The testimony of Joe Lory himself was to the effect that he deposited "$225 currency, United States money; $10 in gold; $.91 in silver" of the United States, and $166.72 in checks, and that he was not indebted in any way at that time to the defendant and that he has not at any time since making the de-

posit received any part thereof.

We are of the opinion from the foregoing evidence that (1) as the receiving teller received the checks without objection and by making appropriate record of them on the books of the defendant and in the pass book of the depositor, charged the defendant and gave credit to the depositor, and (2) as the defendant in his schedule of November 8, 1916, 47 days after the deposit was made, recognized the full amount of the deposit, including the checks, as still a debt, and (3) as the receiving teller himself testified that the checks were put through the regular channels,'' through the bank, the proof sufficiently established, as far as the requirements of the statute are concerned, the value of the checks which were deposited. In *Ellis v. State of Wisconsin* [138 Wis. 513], 20 L. R. A. (N. S.) 444, the court said: ''True, the check, as it went over the counter, was not money, but it was treated as such between the bank and its customer. It was taken as the equivalent of money at the face value. The money equivalent was placed to the credit of the depositor the same in all respects as if legal tender money had been passed over the counter. The relation of debtor and creditor, as between the bank and the depositor, with the characterization of liability on the one side and expectancy on the other as to payment on demand at any time within the banking hours, was created.''

Third.   As to whether the jury had authority to direct that the defendant should be imprisoned in the penitentiary:   Counsel for the defendant insists that whether such punishment should be inflicted should have been determined by the court and not by the jury. The Criminal Code (chapter 38, J. & A. ¶ 3617) provides that the banker receiving the deposit ''shall be termed guilty of embezzlement, and upon conviction thereof, shall be fined in a sum double the amount of the sum so embezzled and fraudulently taken, and in addition thereto, may be imprisoned in the State penitentiary, not less than one nor more than three years.''

Section 6 of division 14, of the Criminal Code (J. & A. ¶ 4143), provides that where punishment "shall be confinement in the penitentiary, if the case is tried by a jury, the jury shall say in their verdict for what time the offender shall be confined." Section 7 (J. & A. ¶ 4149) provides "when a fine is also to be inflicted, the jury shall fix the amount of the fine. When either fine or imprisonment in the penitentiary may be inflicted, the jury shall determine which, and the time of confinement or the amount of the fine." Section 8 (J. & A. ¶ 4146), provides "when the punishment may be either by imprisonment in the penitentiary, or by confinement in the county jail, with or without fine, if the jury will not inflict the punishment of imprisonment in the penitentiary, they shall simply find the accused guilty, and the court shall fix the time of confinement in the jail or fine, or both, as the case may require." Section 9 (J. & A. ¶ 4147), provides that "when the accused pleads guilty, and in all other cases not otherwise provided for, the court shall fix the time of confinement, or the amount of the fine, or both, as the case may require."

We are of the opinion that sections 6, 7 and 8, when read together, mean that in such a case as this, where the defendant may be both fined and imprisoned, the jury may determine both the fine and the imprisonment. Section 6 announces that where the punishment is confinement in the penitentiary and the case is tried by a jury "they shall say in their verdict for what time the offender shall be confined," and section 7 announces that "when a fine is also to be inflicted, the jury shall fix the amount of the fine." It is but reasonable in construing those sections to conclude that in the instant case the jury did have authority to determine whether or not the defendant should be imprisoned in the penitentiary.

Fourth. That imprisonment in the penitentiary should have been for an indeterminate and not a fixed term. Of course, it is the law that an indeterminate

sentence is for the maximum term (*People v. Peters,* 246 Ill. 351; *People v. Joyce,* 246 Ill. 124), and counsel for the State argue that since the sentence is for the maximum term it is unimportant that the court put in the maximum term in the judgment; that writing in the judgment the term of 3 years added no force to it; and further, that, inasmuch as the statute of June 15, 1917 (providing for a system of parole) provides that "every person so sentenced shall be held in the respective institution, reformatory or penitentiary, for and during the definite term in said sentence named, subject to transfer, subject to parole * * * and it shall be termed and taken as a part of every such sentence that all the provisions for transfer, parole and discharge * * * shall be a part of said sentence as fully as though written in it," the defendant is in exactly the same position as if the period of 3 years were eliminated, and, therefore, fixing the term at 3 years was not prejudicial error. However, in section 2 of the Act of June 25, 1917, it is provided that "except for the crimes enumerated in section 1 of this act, every sentence to the penitentiary * * * shall be a general sentence of imprisonment, and the courts of this State imposing such sentence or commitment shall not fix the limit or duration of such imprisonment," and accordingly, it is the contention of the defendant that the sentence of imprisonment should have been for an indeterminate and not a fixed term. We agree with the contention of the defendant. The statute is plain and mandatory that the duration of the sentence or commitment shall not be fixed, but indeterminate.

The judgment, therefore, will be reversed and the cause remanded to the Criminal Court of Cook county, with leave to the State's Attorney to move for, and directions to the court to enter, a proper judgment on the verdict making the sentence of imprisonment general and indeterminate. *People v. Boer,* 262 Ill. 152.

*Reversed and remanded with directions.*