**Charles Mansur, Plaintiff-Appellant, v. Eugene Luhr Company and Luhr Company, Inc., Defendant-Appellee.**

Gen. No. 66–62.

Fifth District.

June 20, 1967.

Rehearing denied August 9, 1967.

Greensfelder, Hemker, Wiese, Gale & Chappelow, of St. Louis, Missouri (Walker & Williams, of East St. Louis, of counsel), for appellant.

Kassly, Weihl, Carr & Bone, of East St. Louis (Rex Carr, of counsel), for appellees.

EBERSPACHER, J.

Plaintiff, a professional Civil Engineer, entered into an oral employment contract with the defendant companies, acting through their President, Eugene Luhr, by which plaintiff was employed to act as chief engineer for both defendants, and to serve as manager of the Well and Dewatering Division of Luhr Brothers, Inc.; the plaintiff commenced work on June 2, 1958. On December 4, 1958, Eugene Luhr was killed in an airplane crash; plaintiff continued his employment with the defendant companies until March 7, 1959, when he accepted employment with another company.

A few days after the death of Eugene Luhr on December 16, 1958, plaintiff had a conversation with Alois Luhr, the successor president of defendants, in which plaintiff outlined the terms of his employment contract as he understood them to be. Plaintiff has alleged, and offered to prove, that the oral agreement provided as compensation for plaintiff's services a salary of $12,500 per year, plus 25% of the gross profits from all projects assigned to the Well and Dewatering Division; that all expenses were to be paid by defendants; that an automobile was to be furnished, and all expenses paid on the same, by defendants; that at the end of the fiscal year, to wit April 30, the books of defendants were to be audited, and plaintiff's share of 25% of the gross profits would be credited to his account at that time.

At that conference Mrs. Adelheide Luhr, the widow of Eugene Luhr, and secretary-treasurer of defendants, was also present. According to the testimony of plaintiff, neither of those two officers denied the terms of his employment contract. Mr. Alois Luhr testified that at this conference plaintiff advised him of the terms of the employment contract, and when asked what his com-

ments were answered, "Well, I said as far as I knew then, I didn't know anything about it and I would have to check into it. It was—I knew there has been discussion on new work, that he was to get a profit on dewatering work, but I didn't consider anything that we had done over the past ten years as new work." In answer to a question as to whether Alois Luhr told plaintiff at that meeting that he was to have no percentage of the Well and Dewatering profits, Alois Luhr answered, "I don't think I told him in those exact words. I said we would have to regroup. We had no such agreement." Alois Luhr further testified that later it was his understanding that plaintiff was to receive a commission on new work brought into the Well and Dewatering Division.

On March 7, 1959, the day plaintiff terminated his services with defendants, plaintiff conferred further with Alois Luhr, the succeeding president of the defendant companies, advising him that he had an opportunity of other employment, but wished an understanding with reference to his receiving his share of the profits from the Well and Dewatering Division. Alois Luhr assured him that they "would be fair," and either agreed or advised him that the costs on jobs in the advance stages of completion were not in so that any profits could be determined.

Plaintiff returned in April at which time he was advised that certain bills pertaining to two projects were not yet in and that they could work out a settlement in June. At that time plaintiff was advised that the "dirt work phase" or "earth work" of a Beardstown job had not been assigned to the Well and Dewatering Division.

Upon plaintiff's return in June, according to plaintiff's testimony, Alois Luhr advised "they were not going to compute the profits assigned to Well and Dewatering in detail and offered me $2,500.00 as my share." This testimony was objected to and moved to be stricken as

405

being in the nature of a compromise and settlement; the court allowed the motion.

This suit, by a complaint in two counts, followed: both counts alleging plaintiff's understanding among the other terms of his employment contract, that he was to receive in addition to his salary and expenses, 25% of the gross profits of all projects assigned to the Well and Dewatering Division. The first count prayed that defendants account to plaintiff for the 25% of the gross profits of all projects assigned to the Well and Dewatering Division; the second prayed damages in the sum of $25,000. Defendant Luhr Brothers', Inc. answer admitted the terms of the contract of employment except for the commission on work assigned to the Well and Dewatering Division, which it denied. Defendant Eugene Luhr & Co. denied each of the allegations of an employment contract.

In a bench trial, the court sustained objection made to plaintiff's testifying as to any conversation concerning the employment contract between plaintiff and Eugene Luhr, as being barred by chapter 51, section 4, Ill Rev Stats,[1] and rejected plaintiff's offer of proof of the terms of the employment contract. Called under section 60 of the Civil Practice Act, the Secretary-Treasurer of defendant companies had admitted that the terms of plaintiff's employment included a salary of $12,500 per year, expenses and the furnishing of a car, but denied that there was any agreement concerning any commission on profits of the Well and Dewatering Division; she admitted that there had been discussion between herself and

---

[1] ". . . and in every action, suit or proceeding a party to the same who has contracted with an agent of the adverse party—the agent having since died—shall not be a competent witness as to any admission or conversation between himself and such agent, unless such admission or conversation with the said deceased agent was had or made in the presence of a surviving agent or agents of such adverse party, . . ."

Eugene Luhr after plaintiff was employed to the effect that plaintiff was to receive 25% of the "net profits or work, dewatering work, brought in," but that this was only a discussion between her husband and herself, and not an agreement with plaintiff. Reviewing all the competent evidence, it can be reasonably said that defendants anticipated plaintiff to receive a 25% commission on some work assigned to the Well and Dewatering Division; whether it was to be on net profits of new work brought in by plaintiff during the time of his employment, or on gross profits of the division as contended by plaintiff appears to be the contention between the parties.

■ Below, plaintiff contended since Mrs. Luhr, an officer of defendants, had admitted plaintiff's employment, and a discussion of a profit-sharing arrangement with the president of the companies, that matters pertaining to the terms of the employment agreement were sufficiently opened to allow plaintiff to testify to the terms of the agreement. Here, plaintiff contends that defendants' denials, by their answers, of the terms of the oral contract of employment and their failure to swear "want of knowledge" as required by section 40 of the Civil Practice Act (c 110, § 40, Ill Rev Stats) where knowledge is lacking, constitute a waiver of the restrictions of the "Dead Man's Act"; and that the pleadings admit full knowledge by defendants of the terms of employment. These novel arguments are not supported by any authorities and we are unable to follow them to any conclusion that section 4 of The Evidence Act (supra) was waived.

Over objection, plaintiff was allowed to testify to his conversation with Alois Luhr in which he outlined his version of the terms of his agreement. The objection was that such testimony was self serving; the specific objection that it was incompetent under section 4 was not made, although in view of the language of the court's

407

finding, "the plaintiff being subject to limitations imposed upon him by the Dead Man's Statute, and being unable to prove the terms of the contract," it is quite evident that the court did not, in consideration of the case, consider plaintiff's testimony of his detailing the terms in that conversation, as competent.[2]

Plaintiff here contends that his testimony to the effect that Alois Luhr told him that they were not going to compute the profits assigned to Well and Dewatering in detail and "offered me $2,500.00 as my share" should not have been stricken, by reason of the fact that there was no dispute at that time (June 1959); that an offer in compromise may only be claimed and excluded from

---

[2] See Hill v. A. J. Canfield Co., 157 F2d 849, at page 850 the CCA 7th Circuit said: "To establish his rate of pay from October 7, 1943, the plaintiff sought to prove a conversation with the defendant's general manager, Frank Canfield, who as alleged in the complaint had agreed to the change in the plaintiff's pay. When evidence of this conversation was offered at the trial, the defendant objected that Frank Canfield was deceased and based its objection on section 4, chapter 51, Ill Revised Statutes (1945). . . . The court sustained this objection. Subsequently, over defendant's objection, in answer to questions propounded by his attorney, plaintiff was permitted to testify to conversations which he claimed he had, after Frank Canfield's death, with Frank Canfield's successor-manager, Arthur J. Canfield, in which he related the conversation he claimed he had had with Frank Canfield. Obviously, the plaintiff was incompetent to testify directly regarding the conversation he had had with the deceased manager. The statute of Illinois cited above rendered the plaintiff incompetent to testify to that conversation. Since the statute had closed the plaintiff's mouth to testify directly as to the conversation, the plaintiff will not be permitted indirectly to bring this incompetent evidence to the jury's attention by testifying as to conversations he had with Arthur Canfield, long after the transaction with Frank Canfield was had and he was dead, in which he told Arthur Canfield what Frank Canfield had said to him about his wage rate. The statute should be construed to effectuate and not to defeat its purpose. Foster and Eddy v. Hart, 29 Ill App 260."

evidence where a dispute exists. The record clearly shows that a dispute existed as to the terms of plaintiff's employment; to treat the offer as an admission, it would be an admission no different than admissions made throughout the record. Defendants consistently admitted plaintiff's employment, but consistently denied the terms of that employment were as stated by plaintiff.

■ Plaintiff also contends that the evidence established an estoppel or ratification concerning the employment agreement. An examination of the evidence and exhibits does not, in our opinion, so show. The fact that the figures showing a profit or loss on projects in the Drilling and Dewatering Division, at various periods during plaintiff's employment, as exhibited by plaintiff's exhibit #3, were made available to plaintiff, but not showing when the projects were brought into the division, is not evidence of the terms of his employment, or that his percentage was to be applied to the gross profit on each job in the division as he contends.

■ The plaintiff did not prove on this record, the allegations of his complaint with reference to a commission arrangement on profits of the Well and Dewatering Division without resorting to incompetent evidence. Furthermore, the creditable evidence in this record on the profit and loss situation in the Well and Dewatering Division at the end of the fiscal year in question, was that a loss was suffered, and plaintiff has failed to prove any damages resulting from the alleged breach of contract.

While the court's judgment order may not have mentioned all the reasons to support its judgment for defendants, we conclude that its result was correct. "Where the decision of the lower court is correct, the reasons acted upon by it are immaterial," Murphy v. Lindahl, 24 Ill App2d 461, 165 NE2d 340 at 343.

■■■■■

We, therefore, affirm the judgment of the Circuit Court of Madison County.

Judgment affirmed.

MORAN and GOLDENHERSH, JJ., concur.