John V. Morse and Dolores Morse, His Wife, Plaintiffs-Appellees, v. Michaelson, Rabig & Ramp, a Partnership, Le Roy Priore, Administrator of the Estate of Christian S. Michaelson, Deceased, Mildred Rader, Executor of the Estate of Karl K. Rabig, Deceased, and Albert H. Ramp, Defendants-Appellants.

Gen. No. 52,070.

First District, Fourth Division.

October 23, 1968.

Tom L. Yates, of Chicago (Frederic L. Goff and Carl E. Abrahamson, of counsel), for appellants.

William D. Maddux, John M. O'Connor, Jr., of Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago, for appellees.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendants' appeal from a judgment entered on a verdict assessing damages in the sum of $14,000 in favor of the plaintiffs and against defendants arising out of the claim of the plaintiffs that defendants were negligent in the services rendered by them as architects in connection with the construction of a basement recreation room on plaintiffs' premises.

Defendants contend principally that the court erred in (1) ruling on the admissibility of evidence, (2) refusing defendants' motions for mistrial, directed verdict and judgment notwithstanding the verdict and (3) striking from defendants' answer the affirmative defense of the Statute of Limitations.

The original complaint was filed October 26, 1959, naming as one of the defendants Michaelson, Rabig & Ramp, a partnership; [1] an amended complaint was filed on May 24, 1960. After the suggestion on February 15, 1965, of the death of C. S. Michaelson and the dissolution of the partnership, a second amended complaint was filed on September 17, 1965, naming Karl Rabig and Albert Ramp as additional defendants and summons were

---

[1] A coplaintiff, Dorothy Morse, also sued for personal injuries in Count II but this claim was stricken on the ground that it was barred by the Statute of Limitations.

ordered issued against them; on November 10, 1965, a third amended complaint was filed naming the partnership, Le Roy Priore, Administrator of the Estate of Christian S. Michaelson, Mildred Rader, Executor of the Estate of Karl K. Rabig, and Albert H. Ramp who was the sole surviving partner; on June 31, 1966, a fourth amended complaint was filed.

The fourth amended complaint alleged substantially that plaintiffs were the owners of certain premises located in Riverside, Illinois; that in the spring of 1957 Michaelson, Rabig & Ramp was a partnership engaged in the business of architecture and engineering; that plaintiffs employed them to prepare plans for the construction of a recreation room; that defendants agreed to draw plans, select and supervise contractors; that defendants selected McKirnan to perform certain heating work; that defendants breached their agreement (a) by failing to investigate the financial condition of McKirnan, (b) by selecting an incompetent heating contractor, (c) by representing to plaintiffs that McKirnan was qualified to do the heating work and that he was financially stable when in fact defendants knew or should have known that McKirnan was without the necessary skills and was on the verge of insolvency, (d) by failing to adequately supervise the work, (e) by failing to inspect or by negligently inspecting McKirnan's work and by their negligence in several other respects; that plaintiffs were damaged by the acts and omissions of defendants in that plaintiffs' premises were and continue to be without adequate heat, the building and its contents have been damaged and large amounts of money have been expended in temporary repairs and further expenditures will be necessary to put the premises in the condition that it would have been had defendants performed their agreements.

Defendants denied the allegations of negligence and breach of duty and averred affirmatively that the Stat-

ute of Limitations barred their action which plaintiffs denied in their reply.

The evidence disclosed that the architectural and engineering firm of Michaelson, Rabig & Ramp was employed by plaintiffs to prepare and draw plans for a recreation room and appurtenances in the basement of their residence in Riverside, Illinois. The firm prepared blueprints and specifications and solicited bids. The total cost of the contracts set was $38,000. One of the items installed was a heating system under the concrete floor of the recreation room. The contract for the heating was let by plaintiffs to defendant James E. McKirnan [2] on April 26, 1957, and he undertook for a price of $2,079 to install heating according to specifications which did not call for radiant heating.[3] The written contract between plaintiff John Morse and McKirnan was approved by defendant Ramp and signed by Morse. The work was inspected by defendants and was completed in the latter part of 1957. Late in 1958 or early in 1959 there was a leak in the floor which was repaired. John Morse testified:

> The heating system in the recreation room was bad right in the beginning and we couldn't keep heat and in 1964 it gave out. In 1959, 1958, 1959 to 1964 it was leaking and we couldn't maintain heat in our home. I could hear the sump pumps running and the situation of the hot water in the sump pumps in the well continued. We had hot spots all over the floor.

Plaintiffs concede that the contract with McKirnan did not specify a radiant heating system but urge that

---

[2] James E. McKirnan, doing business as H. V. McKirnan, was a named defendant but was dismissed on plaintiffs' motion at the trial.

[3] There is a dispute as to whether radiant heating was actually installed and if so whether it was defective.

the contract was subsequently changed by an oral agreement between plaintiff John Morse and defendants through one of the partners, Christian S. Michaelson. Plaintiffs sought to establish this oral modification by the testimony of John Morse that he had conversations with the deceased partner Michaelson to this effect.

■ Defendants objected to the admission into evidence of these conversations as violative of section 4 of the Evidence Act (Ill Rev Stats 1965, c 51, § 4).[4] In Mansur v. Eugene Luhr Co., 84 Ill App2d 403, 408, 228 NE2d 265, the court held that conversations between a deceased officer of the corporation and plaintiff employee regarding the terms of an oral salary contract were not admissible under section 4 of the Evidence Act. See Hill v. A. J. Canfield Co., 157 F2d 849 (CCA 7th Circuit). Plaintiffs contend, however, that evidence of a transaction is admissible citing Lueth v. Goodknecht, 345 Ill 197, 177 NE 690 (lost receipt showing payment of a note) and Helbig v. Citizens' Ins. Co., 234 Ill 251, 84 NE 897 (payment of an insurance premium). Neither of those cases dealt with conversations and are therefore inapplicable. The objection to the testimony of John Morse as to conversations with the deceased partner Michaelson out of the presence of any surviving partner should have been sustained.

---

[4] In any action, suit or proceeding by or against any surviving partner or partners, joint contractor or joint contractors, no adverse party or person adversely interested in the event thereof, shall, by virtue of Section 1 of this act, be rendered a competent witness to testify to any admission or conversation by any deceased partner or joint contractor, unless some one or more of the surviving partners or joint contractors were also present at the time of such admission or conversation; and in every action, suit or proceeding a party to the same who has contracted with an agent of the adverse party—the agent having since died—shall not be a competent witness as to any admission or conversation between himself and such agent, unless such admission or conversation with the said deceased agent was had or made in the presence of a surviving agent or agents of such adverse party, . . . .

■ Defendants next urge that prejudicial error occurred when plaintiffs were permitted to testify concerning allegedly unsatisfactory work by McKirnan's father on occasions prior to 1957. The objection thereto should have been sustained on the ground of irrelevancy.

Further, the following question was asked of plaintiff John Morse by his attorney: "[I]sn't it a fact that at about the time that this job was done by McKirnan that he went into bankruptcy?" The court sustained the objection "at this time."

■ ■ It was later admitted by plaintiffs' counsel in conference outside the presence of the jury that McKirnan did not go into bankruptcy until more than two years after the job was completed and no evidence as to bankruptcy was ever proffered. In his opening statement plaintiffs' counsel told the jury:

> And the evidence will show that at the time, or shortly after this occurrence took place, the heating contractor went into bankruptcy.

We deem the question to have been prejudicial to defendants. As stated in Chicago, B. & Q. R. Co. v. Kelley, 74 F2d 80, 86 (CCA 8th Circuit):

> The mere putting of a question which conveys to the jury improper information, and which tends to render the trial unfair, should ordinarily entitle the opposing party to a new trial. Standing alone, we should hesitate to grant a new trial for this misconduct because the court took great care in admonishing the jury to disregard these questions and any inferences that might arise therefrom, but it must be understood that the conduct was highly improper and wholly unwarranted.

In the instant case there was no admonishment by the court and therefore the question when considered in relation to the opening statement resulted in substantial prej-

udice to the defendants. See 109 ALR 1091 and Gordon v. Checker Taxi Co., 334 Ill App 313, 79 NE2d 632.

■ Defendants also claim error in the admission into evidence, over objection, of the testimony of plaintiffs' witness Kelly, a heating contractor, to the effect that he had on other occasions "installed a radiant heating system where the specifications call for something else." We cannot perceive that Kelly's actions on other jobs were binding on defendants.

In view of the foregoing errors we will reverse and remand for a new trial and deem it unnecessary to discuss all of the trial errors urged by the defendants.

■ ■ We cannot accede to defendants' request that we reverse without remanding. The trial judge's rulings in denying a directed verdict for defendants and in refusing a judgment for defendants notwithstanding the verdict were proper. We cannot say that all of the evidence when viewed most favorably to the plaintiffs so overwhelmingly favors the defendants that no contrary verdict based on that evidence could ever stand. (Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504.)

■ One further point remains. The work was completed in 1957. The suit was filed in 1959 against the partnership in the firm name. (Ill Rev Stats 1957, c 110, § 27.1.) [5] Two of the partners, Ramp and Rabig,

---

[5] § 27.1 Actions against partnerships.)

(1) A partnership may be sued in the names of the partners as individuals doing business as the partnership, or in the firm name, or both.

(2) An unsatisfied judgment against a partnership in its firm name does not bar an action to enforce the individual liability of any partner.

The effect of a judgment against a partnership in its firm name is set out in Ill Rev Stats 1957, c 77, § 1b:

1b. Firm name of partnership as judgment debtor.

A judgment rendered against a partnership in its firm name shall support execution only against property of the partnership

373

were made additional parties in September 1965 and in November 1965 the Administrator of the Estate of Michaelson (Michaelson was the third partner) was made an additional party. The Administrator of the Estate of Rabig was substituted for Rabig. These defendants in their answers pleaded the five-year bar of the Statute of Limitations. (Ill Rev Stats 1965, c 83, § 16.) Plaintiffs filed a reply denying the applicability of the Limitation Statute. At the conclusion of the evidence plaintiffs moved to strike this affirmative defense and the court struck it. Defendants contend that plaintiffs chose to sue the partnership as an entity and were barred after five years from making the individual partners additional parties. Plaintiffs argue that the addition of these defendants was timely since it conformed to Ill Rev Stats 1965, c 110, § 46(4). That section provides that such an amendment may be made and that it relates back to the date of filing of the original pleading, even though the Statute of Limitations had expired, upon conditions summarized as follows:

(a) the period of limitations had not expired when the original action was commenced;

(b) failure to join the additional party was inadvertent;

(c) service of summons was in fact had upon the person, his agent or partner, even though he was served in the wrong capacity or as agent of another;

(d) the additional defendant, within the time that the action might have been brought or asserted against him, knew that the original action was pending and that it grew out of a transaction involving him;

and shall not constitute a lien upon real estate other than that held in the firm name.

374

(e) it appears from the original and amended pleadings that the cause of action asserted in the amended pleadings grew out of the same transaction or occurrence.

Defendants maintain that there was no showing of compliance with subsection (b) since the failure to join additional parties was not inadvertent but was a definite choice to sue only the partnership entity. Plaintiffs counter with the argument that the following steps in the litigation demonstrate that their failure was inadvertent. The suit was filed in October 1959, two years after the completion of the work; no answer was filed by the defendant partnership until October 22, 1964; a substitution of attorney was filed for the partnership on January 22, 1965; the suggestion of death of one of the partners, Michaelson, and the consequent dissolution of the partnership was not spread of record until February 15, 1965, although counsel for defendants in his opening statement said that Michaelson had died in June of 1960. Amended complaints naming the individual partners were filed shortly thereafter.

The purpose of section 46(4) hereinabove referred to is set forth in the Historical and Practice Rules to that section:

Paragraph 4 was added in 1955 to cover the situation in which the plaintiff sues the wrong defendant but serves process upon the agent of the right defendant, and the Statute of Limitations runs on the claim before rectification of the mistake.

In Solone v. Reck, 55 Ill App2d 282, 204 NE2d 614, we adopted the definition of "inadvertence" as stated in Robinson v. Chicago Nat. Bank, 32 Ill App2d 55, 61, 176 NE2d 659:

In our view the word "inadvertence" means excusable ignorance, not excusable failure to act after the

facts are discovered. . . . A plaintiff must act with reasonable diligence after the identity of the true defendants becomes known.

Plaintiffs rely on Silver v. Lee Shell Equipment Corp., 31 Ill App2d 266, 175 NE2d 287. In that case plaintiffs sued the corporation and served summons on I. W. Shell. After the Statute of Limitations had run, plaintiffs, fearing that the Shells (I. W. and William) were not doing business as a corporation, made the Shells additional parties defendant. The Appellate Court reversed a dismissal and held that the failure to join the individuals in the first instance was inadvertent. However, the opinion stated that section 46(4) "took account of the problem that lawyers in our time have of determining the *right* defendant." (Emphasis supplied.) Since plaintiffs knew the identity of the individual members of the partnership when suit was filed against the partnership in the firm name and elected not to sue them as individuals, they cannot avail themselves of section 46(4) as an exception to the bar of the Statute of Limitations. The trial court erred in striking the affirmative defenses of the Statute of Limitations and its ruling thereon is reversed.

The judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.

McCORMICK, P. J. and ENGLISH, J., concur.