VITO BALESTRI, Plaintiff-Appellant, *v.* HIGHWAY & CITY TRANS-
PORTATION, INC., Defendant-Appellee.

First District (5th Division)    Nos. 76-1328, 76-1450 cons.

Opinion filed February 17, 1978.

John A. Doyle, Ltd., of Chicago (William J. Harte, of counsel), for appellant.

Pretzel, Stouffer, Nolan & Rooney, Chartered, of Chicago (Joseph B. Lederleitner and Robert Marc Chemers, of counsel), for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court:
This appeal arises from an action to recover damages for the personal injuries sustained by plaintiff as he worked on a loading dock operated by defendant. Following a jury trial, judgment was entered for plaintiff in the amount of $50,000. The trial court denied plaintiff's motion for a new trial on the issue of damages only and it is from the denial of that motion that plaintiff appeals. He contends that a new trial on the issue of damages is warranted because: (1) the trial court erred when it allowed defense counsel to elicit testimony regarding plaintiff's prior injuries, (2) the trial court erred when it refused plaintiff's tendered jury instruction number 12, (3) defense counsel's reference to a criminal charge against plaintiff and his final argument to the jury were both highly improper and prejudicial, and (4) the jury failed to adequately consider each and every element of damages in arriving at its verdict.

At trial the following evidence pertinent to this appeal was adduced.

*For plaintiff*
*Plaintiff Vito Balestri on his own behalf*
On May 16, 1973, his trucking experience consisted of approximately 19 years as a truck driver, and eight years as a dispatcher. Prior to 1971 he had been relatively free of injury. Between 1971 and 1973, he sustained injuries to his back, left elbow, right hip and left shoulder, and therefore missed work for several months each year. He returned to work in late April of 1973, and handled a full and normal workload. On May 16, he drove a tractor with a 40-foot trailer to Terminal Freight Handling Company. Upon his arrival, Bernard Boos, an employee of defendant, was assigned to help him load 20 cartoned refrigerators, each one standing approximately 6½ feet high and weighing between 400 and 500 pounds, onto the truck. To load a refrigerator, he would hold a two-wheeled dolly while Boos would push the carton to the edge of the four wheeled cart, or "flat," upon which it was standing. As Boos tipped the refrigerator toward him, he would push the blade of the dolly underneath it, catching it on the dolly, and receiving the weight of the falling refrigerator with the upper part of his body. He and Boos would then run the refrigerator up a ramp to the trailer, and he would bring it into the trailer and position it.

After loading 18 refrigerators in the manner described above, Boos

tipped the 19th one toward him. As it began to tilt, a two by four board of wood started to slide off the top of the carton. He yelled "look out". Boos ran away, and he jerked to his right. The refrigerator fell and he caught its full impact with his body, while the board struck him on his left elbow. Boos then took the load while he leaned against a door post. He was taken to the doctor who was on the premises. An X ray of his arm revealed no broken bones, but he refused to allow the doctor to examine his back saying that he had to report the accident to his employer. After contacting his dispatcher, and switching tractors with another driver, he drove back to All-American Transport.

He began to visit Dr. Coleman on a weekly basis from May to October, and received various treatments for his back and elbow. He returned to his work as a truck driver in September, but had to stop on the fourth day because his pain was too great. In October he visited Dr. Scuderi, an orthopedic surgeon, and was hospitalized at St. Joseph's Hospital where a number of surgical and therapeutic procedures were performed. He next was hospitalized at the Rehabilitation Institute of Chicago and was under the care of Dr. Sahgal. Since the time of his accident his back has given him constant pain and he is 'no longer capable of a variety of activities which he used to engage in before his accident. He identified a number of bills which he incurred for medical services and prescriptions which totaled $4,118.50.

On cross-examination he admitted that since 1964 he had been treated for a number of various injuries including an injury to his left elbow in 1972, and a back injury in 1971. He admitted that in September 1973 after he found that he could no longer drive a truck and was told by his boss that no other job was open, he did not apply anywhere else for any other job.

*Bernard Boos under section 60, an employee of defendant*

On the day of the incident he was working with plaintiff in the manner which plaintiff described. As he was standing next to plaintiff tilting one of the refrigerators onto the dolly, he noticed a piece of wood that was starting to fall from the top of the carton. While holding the refrigerator, he ducked his head out of the way. After the wood fell, he and plaintiff finished putting the refrigerator on the floor. Plaintiff did not appear to him to be in any pain. Plaintiff said that the wood hit and hurt his arm.

*Emmett Jefferson under section 60, an employee of defendant*

On May 16, 1973, he was Ben Boos' supervisor. He did not see the accident. His description of the procedure for loading refrigerators from flats onto trucks corroborated plaintiff's testimony. At trial he would only say that plaintiff "looked funny," but he admitted testifying at a deposition that after the accident plaintiff appeared to be in pain. He

denied that plaintiff said anything to him about twisting his body, but he admitted testifying at a deposition that plaintiff told him he twisted to avoid being hit by the wood. He acknowledged that he saw plaintiff rubbing his shoulder and arm. He denied ever having seen the type of wood which struck plaintiff being used on the loading dock, but admitted testifying at a deposition that he had seen defendant's employees use that type of wood as a block in their loading operations.

On direct examination he stated that plaintiff never complained about having injured his lower back or elbow, and that plaintiff's walk appeared to be normal. He recalled that he had seen two by four pieces of wood brought into the terminal on trucks, and that truck drivers would throw the wood and other rubbish anywhere they could. He acknowledged that it was his duty to inspect the cartons which contained the refrigerators, but he did not know that a piece of wood was on top of a refrigerator on the day of the incident.

### Dr. Carl Scuderi

He is an orthopedic surgeon. He first examined plaintiff on October 10, 1973 and determined that his lower back was weaker than normal due to a congenital condition known as spondylolisthesis. This normally would not cause any problems, but an injury adding stress would be competent to produce pain and disability. Plaintiff also had an inflammation of the joint lining of his left elbow, but he made a good recovery after an operation and had no further complaints. Although he prescribed various treatments for plaintiff's back, plaintiff continued to complain of severe pain. He concluded that plaintiff had a functional overlay, which did not mean that plaintiff wasn't having the pain, but rather that he could not find any objective medical justification for it. In his opinion, the history he was given of plaintiff's May 16 accident was medically competent to cause the complaints for which he treated plaintiff.

On cross-examination he acknowledged that although objective findings generally appear after someone has had pain for a considerable amount of time, plaintiff's objective findings were negative. He admitted that the tests he conducted did not objectively indicate that a man should limp to the degree that plaintiff did.

### Owen McCaffrey

He is an actuary employed by the Wyatt Company. His figures showed that the average work-life expectancy of a hypothetical 53-year-old male in the work force is approximately 12 years. His hypothetical calculations showed that from May 16, 1973, to February 16, 1976, plaintiff lost $39,185 in wages. Plaintiff's future wages discounted to present value were calculated to be $154,294.

On cross-examination he admitted that his figures are hypothetical averages and that he did not know what wages plaintiff actually earned.

### Dr. Vinod Sahgal

He is a neurologist and rehabilitation expert at the Rehabilitation Institute of Chicago where he examined and treated plaintiff. He found that plaintiff had a congenital condition of spondylolisthesis, as well as several signs of disability in his legs and back. He concluded that plaintiff's complaints could be competently caused by his objective medical condition. In his opinion, plaintiff's condition was permanent, and would prevent him from lifting heavy weights or working as a truck driver.

On cross-examination he admitted that although he asked plaintiff did not tell him about any other back injuries. He acknowledged that based upon his examination, he determined that plaintiff was employable in the right type of work and had excellent vocational potential. He admitted that the objective medical findings did not appear to be sufficient to justify the amount of pain which plaintiff complained of, but that this was not unusual, since the psychological and emotional aspects of functional overlay played a part.

### Dorothy Holbrook

She is a secretary at the Rehabilitation Institute of Chicago. She produced all of plaintiff's medical records, and stated that the bill for services rendered to him totaled $4,597.40.

### Linda McBride

She works in the records department at St. Joseph's Hospital. She produced all of plaintiff's medical records, and stated that the bill for his hospitalization and services rendered to him totaled $8,717.58.

### Dr. Kenneth Peiser

He is a clinical psychologist at the Rehabilitation Institute of Chicago. Plaintiff showed a testing pattern typical for people who are depressed due to a physical disability, and he seemed to feel inadequate with a damaged sense of self-esteem. Although he did not think that plaintiff was complaining of a disability to gain attention, he thought that plaintiff probably could return to work. He interviewed plaintiff again in January 1975 and did not reach any different conclusions.

On cross-examination he acknowledged that most people suffer degrees of depression from time to time and that he did not do any vocational counseling with plaintiff.

### Patrick J. Hickey

He is the Chicago Terminal Manager for All-American Transport, Inc., where plaintiff was employed as a truck driver. In 1973, due to an injury, plaintiff had missed work from February to the end of April. After the May 16 accident plaintiff next worked during the week which ended on September 21, 1973.

On cross-examination he admitted that in every year in which plaintiff

had worked for All-American Transport, starting with August 1, 1970, there was a period of time when he missed work due to injuries. He acknowledged that in 1971 plaintiff suffered a lower back injury.

*For defendant*
   *Dr. Louis Pertt*
He is an industrial physician and surgeon who sees patients from several companies, including defendant. Reading from his records, he stated that he examined plaintiff on May 16, 1973, and found that there was no swelling or discolorations in his left elbow, that its motion was good, and that the X rays of it were negative. He treated and bandaged plaintiff and did not see him again.

On cross-examination he admitted that he is not board certified. He did not see any calcium deposits in plaintiff's left elbow.
   *Ralph Kravis, defendant's office manager*
The refrigerators that plaintiff was handling on May 16, 1973, had been unloaded the night before when all of the docks were operating and numerous persons had access to the premises.

On cross-examination he acknowledged that prior to unloading defendant's employees are supposed to examine the cartons for any evidence of damage.

OPINION

■■■ Plaintiff first contends that the trial court erred when it allowed defense counsel to cross-examine him regarding his prior injuries. Plaintiff argues that those injuries were unrelated and irrelevant to the injuries in issue, and since defendant failed to connect them, their admission into evidence was reversible error. It is clear that when counsel has failed to supply the connection needed to make evidence admissible, opposing counsel must move to strike the unconnected and therefore inadmissible evidence, or the point is waived. (*Greig v. Griffel* (1977), 49 Ill. App. 3d 829, 364 N.E.2d 660; *Craft v. Acord* (1974), 20 Ill. App. 3d 231, 313 N.E.2d 515.) Since plaintiff never moved to strike the testimony complained of, he has waived any error in its admission. We note, additionally, that plaintiff himself on direct examination brought up the subject of his prior injuries, and that any evidence thereof, even if elicited on cross-examination, would be properly before the jury. *Palsir v. McCorkle* (1966), 70 Ill. App. 2d 425, 216 N.E.2d 682.

Plaintiff next contends that the trial court's refusal of his tendered instruction number 12 was error. That instruction advised as follows:

> "If you find that the defendant was negligent and that its negligence was a proximate cause of injury to and disability of the plaintiff, you should then find for the plaintiff and his right to

recover damages for such injuries and disability is not barred or to be limited in any way by the fact, if you find it to be a fact, that the plaintiff's injury and disability resulted from an aggravation of a pre-existing condition by the occurrence in question nor by reason of the fact, if you find it to be a fact, that the plaintiff because of a pre-existing physical condition was more susceptible to injury than other persons might have been."

■■■ A tortfeasor is liable for the injuries he causes even though the injuries were aggravated by a pre-existing condition. (*Chicago City Ry. Co. v. Saxby* (1904), 213 Ill. 274, 72 N.E. 755.) Defendant argues, however, that since the jury was given Illinois Pattern Jury Instruction, Civil, No. 30.03 (2d ed. 1971), which provides that the plaintiff must be compensated for, *inter alia*, "[t]he aggravation of any pre-existing ailment or condition," it was therefore adequately and sufficiently instructed. We disagree. At trial and throughout this appeal plaintiff has relied on *Pozzie v. Smith* (1975), 33 Ill. App. 3d 343, 337 N.E.2d 450, in which the court held that IPI Instruction No. 30.03 did not adequately advise the jury and that the trial court's refusal of plaintiff's tendered instruction left the jury without proper judicial guidance. (33 Ill. App. 3d 343, 347, 337 N.E.2d 450, 453.) In the instant case, as in *Pozzie*, one of defendant's main defenses to plaintiff's action was that his physical condition was substantially pre-existing. Plaintiff's tendered instruction, therefore, sought to respond to the emphasis which had been placed on his prior injuries. The trial court, however, simply rejected the tendered instruction without any attempt at modification or alteration. In reaching its decision, the *Pozzie* court correctly stated that, "IPI instructions are not intended to be all inclusive." (33 Ill. App. 3d 343, 347, 337 N.E.2d 450, 453.) We therefore conclude that the simple refusal of plaintiff's tendered instruction was indeed an error which left the jury to consider the issue of damages without proper judicial guidance.

■■ A new trial solely on the issue of damages may be granted only where the damage issue is so separable and distinct from the issue of liability that a trial of it alone may be had without injustice, and where the damages awarded do not appear to be the result of a compromise on the question of liability. (*Paul Harris Furniture Co. v. Morse* (1956), 10 Ill. 2d 28, 139 N.E.2d 275.) A review of the record indicates that this standard has been met in the instant case. It does not appear that the damages awarded by the jury were the result of a compromise on the question of liability. The verdict entered against defendant on that question is amply supported by the evidence, and although we have found that the refusal of plaintiff's tendered instruction left the jury without proper judicial guidance as to the issue of damages, the issue of liability was not thereby affected. We, therefore, conclude that this cause should be remanded to

the trial court with direction to grant a new trial solely on the issue of damages.

■■■ Since this cause must be remanded for a new trial as described, we need not reach the issues plaintiff has raised regarding whether the jury adequately considered each and every element of damages, and whether defense counsel's closing argument was improperly prejudicial. We would note, regarding the latter issue, that at no time during the trial did plaintiff object to the allegedly prejudicial argument. Since the argument does not appear to be so inflammatory and prejudicial so as to deteriorate the judicial process (*cf. Belfield v. Coop* (1956), 8 Ill. 2d 293, 134 N.E.2d 249), plaintiff's failure to object at trial must be considered a waiver of the issue. (*Bruske v. Arnold* (1969), 44 Ill. 2d 132, 254 N.E.2d 453, *cert. denied* (1970), 398 U.S. 905, 26 L. Ed. 2d 65, 90 S. Ct. 1697; *Miceikis v. Field* (1976), 37 Ill. App. 3d 763, 347 N.E.2d 320.) An issue which does commend itself to our current attention is plaintiff's allegation of prejudice due to defense counsel's reference to an unrelated criminal charge. During cross-examination of Dr. Kenneth Peiser, who had interviewed plaintiff, defense counsel asked "[w]ould you say that a man who had been accused of contributing to the delinquency—," but was interrupted by opposing counsel's objection. This objection was sustained, the question was ordered stricken, and the trial judge specifically instructed the jury to completely disregard it. It is nevertheless clear that the question conveyed irrelevant information to the jury, and posed a substantial probability of prejudice. Although the trial court's careful admonishment to the jury to disregard the question leaves us reluctant to conclude that prejudice actually resulted, we must condemn defense counsel's inquiry as being wholly unwarranted and improper. (See *Morse v. Michaelson, Rabig & Ramp* (1968), 101 Ill. App. 2d 366, 243 N.E.2d 271.) We trust that on remand it will not be repeated.

Based on the foregoing the judgment of the circuit court is reversed and the cause is remanded for a new trial on the issue of damages only.

Reversed and remanded.

MEJDA and WILSON, JJ., concur.