(No. 68042.—

PHILLIP J. GILLESPIE, Appellee, v. CHRYSLER MOTORS CORPORATION, Appellant.

*Opinion filed March 22, 1990.*

364

CALVO, J., took no part.

John C. Berghoff, Jr., John E. Muench and James C. Schroeder, of Mayer, Brown & Platt, of Chicago; Joseph B. McGlynn, Jr., of McGlynn & McGlynn, of Belleville; and C. Dale Hubbard, of Southfield, Michigan, for appellant.

Cook, Shevlin, Keefe & Ysursa, of Belleville (Bruce N. Cook, of counsel), for appellee.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Phillip J. Gillespie, was allegedly injured when the hood of a United Parcel Service (UPS) van he was servicing dropped on his back. Plaintiff brought suit against defendant, Chrysler Motors Corporation, alleging that a defective hood hinge manufactured by defendant and sold to UPS, which broke and caused the hood to fall on plaintiff, was the cause of his back injuries. After the presentation of all the evidence at trial, the circuit court of St. Clair County directed a verdict in plaintiff's favor on the issue of whether the hinge was unreasonably dangerous. The jury, however, returned a general verdict in defendant's favor after finding that the unrea-

sonably dangerous hood hinge was not a proximate cause of plaintiff's injuries. The circuit court then granted plaintiff's post-trial motion for a new trial, holding that prejudicial error had occurred when defendant improperly impeached plaintiff with a prior statement and used the prior statement during its opening statement and closing argument. The appellate court affirmed the circuit court's order for a new trial. (178 Ill. App. 3d 5, 7.) We granted defendant's petition for leave to appeal (107 Ill. 2d R. 315).

## PLAINTIFF'S MEDICAL HISTORY

Plaintiff was an auto mechanic who worked in a UPS facility. In February 1981, plaintiff suffered a lower back strain when he lifted a heavy rear spring on a UPS van. This injury was so severe that plaintiff spent five days in the hospital and missed two weeks of work. On March 7, 1981, plaintiff visited his treating physician, Dr. John Jemsek, for a follow-up examination. At this time Dr. Jemsek's nurse, Karen O'Dell, made a notation in plaintiff's medical record that "when he gets up in the truck he has to get up on his knees and pull himself up."

On March 9, 1981, plaintiff claimed that he had raised the hood of a UPS van to perform maintenance work. He noticed that the springs on one of the hinges were missing. While he was endeavoring to replace them, the rivet in the hinge broke, causing the hood to fall against plaintiff's back and pin him under the hood. Plaintiff was taken to the hospital, but was discharged later that evening. After examination and treatment by Dr. Jemsek, plaintiff missed a week of work. Plaintiff also saw a second physician, Dr. Gaylin Lack, on May 15, 1981, in connection with injuries plaintiff suffered after lifting another rear spring, similar to what occurred in February. Plaintiff claims the March 9 accident is the cause of his severe back injuries.

## THE TESTIMONY AT TRIAL

During the trial, after plaintiff had rested his case, defendant took plaintiff's evidence deposition in the judge's chambers. The following exchange occurred:

"Q. Do you remember telling anybody on March 7th that when you get up in the truck that you have to get up on your knees and pull yourself up?

A. Not that I recall."

Plaintiff's evidence deposition was read to the jury without objection.

Dr. Jemsek's deposition was taken in a similar fashion. His testimony revealed that, prior to plaintiff's back problems in 1981, he had intermittently treated plaintiff for back pain from April 1975 through June 1977. During the course of questioning Dr. Jemsek, plaintiff objected to any testimony concerning the nurse's note; the trial court sustained the objections on hearsay grounds. Therefore, any direct references to the nurse's note were not read to the jury. The relevant portion of the deposition, with the material excluded by the trial court in italics, is as follows:

"Q. Doctor, let me show you what I have \*\*\*. Could you tell me what this is a copy of?

A. This is a copy of my history and physical \*\*\* when [plaintiff] was admitted on the 17th of February, 1981. \*\*\*

Q. What history did you obtain on that occasion?

A. Well, he came into the office on the 16th and he was complaining about severe pain in his lower back and upper thighs and with difficulty in getting up and down. He said this all started on the 13th of February, but then when it became worse then I put him in the hospital. He said he could hardly get up and down. He had to crawl instead of walk, and I felt he had an inflammation of the nerves of his. back and legs, and so he was put in the hospital. \*\*\*

Q. \*\*\* [O]n February 16, 1981, \*\*\* [w]hat were the result[s] of your examination [of plaintiff]?

A. Okay, then he had a great deal of tenderness, especially in the upper and medial thighs. Reflexes, however, were normal, as well as the knee jerks and muscle tone and strength. It was just when he tried to get out of bed he had difficulty in getting up without sliding one foot out, then getting the other foot out. He couldn't get out of bed abruptly and he had a great deal of difficulty raising both legs without a great deal of pain in the upper thighs. ***

Q. Was he released to return to work under any treatment, either medication or exercises?

A. He was just on the Flexeril ***. I did see him on the 7th of March. At that time he was checked in the office and he said he was fine as long as he was sitting or lying down, but when he tries to get up and move around, he had a little trouble. And he had to flex his knees, he said, when he got into the truck. So he was limping around. ***

\* · \* \*

Q. *** [U]nder the entry [in your records] of March 7, [1981], the entry says 'when he gets up in the truck he has to get up on his knees and pull himself up'?

A. I mentioned that already.

MR. COOK [plaintiff's attorney]: Objection. Leading form of the question.

Q. Is that a verbatim quote from Mr. Gillespie or are you paraphrasing his condition?

A. Well, evidently, this is a note that my nurse got and then I put down my impression there by putting down 'limping around.'

\* \* \*

Q. Doctor, with regard to the comment, 'He was practically crawling because of pain,' taking that observation in conjunction with the nurse's note that he had to pull himself up into the truck, did you make any connection between the two in terms of how he was responding to treatment or care during this time from the 17th up to the 7th of March?

MR. COOK: Objection [withdrawn when deposition was read to jury], form of the question.

A. We just treated him. He got well." (Emphasis added.)

As just noted, during the deposition, plaintiff objected to the form of this final question before Dr. Jemsek answered. However, plaintiff withdrew the objection to allow the jury to hear this testimony, admittedly because plaintiff's counsel viewed the doctor's answer as favorable, in that the doctor said that plaintiff "got well."

The jury also heard the evidence deposition of Dr. Lack, which also contained a statement regarding the nurse's note:

"Q. Did he indicate to you that on March 7, 1981, approximately two days before he allegedly sustained an injury in this case, that he had reported to Dr. Jemsek's office and gave the nurse the history that as long as he was sitting or lying he was okay, but when he tries to get up and move around he has a lot of trouble; when he gets up in the truck he has to get up on his knees and pull himself up, and Dr. Jemsek related he was limping? Did he relate that to you?

A. No, I don't have a recollection or a documentation of that history."

Plaintiff did not object to this question during the deposition, and did not raise the issue when he used Dr. Lack's deposition in his case in chief.

Defendant also made reference to the note during closing argument, eliciting an objection from plaintiff. The trial court sustained the objection and instructed the jury that statements of counsel are not evidence.

Plaintiff testified that after the hood fell on him, he called for help, and two co-workers assisted him. Defendant called to the stand six of the seven other UPS workers who had been on duty at the facility where plaintiff worked at the time the accident allegedly occurred. All six denied that plaintiff called for help or that they had helped lift the hood off of plaintiff. Plaintiff did present

evidence to indicate that the seventh employee, Kevin Crouch, had been one of the two persons who had removed the hood from plaintiff's back. However, Crouch had moved out of State, and was unavailable to testify because he was beyond plaintiff's subpoena power. Defendant's attorney used the unavailability of Crouch to defendant's advantage when he stated the following during closing: "I didn't hear an investigator take the stand and say, under oath, we looked all over for Kevin Crouch and couldn't find him." Plaintiff objected to this statement, but the trial judge overruled the objection.

After the jury returned a verdict in favor of defendant, plaintiff moved for a new trial. The trial court granted this motion, concluding that defendant's asking whether plaintiff had made the statement contained in the nurse's note was improper because defendant failed to prove the inconsistent statement contained in the nurse's note by calling the nurse to testify, and that this, combined with defendant's references to the nurse's note in opening statement and closing argument, constituted error so prejudicial that it warranted a new trial.

## THE APPELLATE COURT OPINION

The appellate court, in affirming the trial court's order granting a new trial, first noted that a reviewing court will not overturn a decision on a motion for a new trial unless the trial court abused its discretion. (175 Ill. App. 3d at 7, citing *Ramseyer v. Illinois Central R.R. Co.* (1969), 110 Ill. App. 2d 95, 96.) The court then noted that plaintiff was the only witness who testified that the accident occurred, making plaintiff's credibility the crucial issue at trial. Therefore, the appellate court concluded, the improper impeachment of plaintiff through the use of the nurse's note, compounded by defendant's repeated references to the note during the trial, had so

serious a prejudicial effect on plaintiff as to warrant a new trial. 178 Ill. App. 3d at 8.

Specifically, the appellate court disagreed with defendant's contention that plaintiff, by failing to object at trial to the references to the nurse's note, had waived his right to raise this issue on appeal. The court explained that a court may review errors where a party made no objection to ensure a fair trial and to protect the judicial process from deterioration. (178 Ill. App. 3d at 9, citing *Underwood v. Pennsylvania R.R. Co.* (1966), 34 Ill. 2d 367, 371.) It also stated that defendant, in a pretrial conference, had told the trial court that it intended to call the nurse to testify. Therefore, the appellate court concluded that, despite plaintiff's failure to renew the objection each time defendant raised the issue of the nurse's note, defendant was aware that it had to submit the nurse's testimony in order to properly introduce any evidence concerning the note. 178 Ill. App. 3d at 9.

The appellate court also disagreed with defendant's contention that, even if its references to the note were error, the error was harmless. The court held that the nurse's note was not merely cumulative evidence. Particularly, the court distinguished Dr. Jemsek's statement that plaintiff had to "flex his knees *** when he got into the truck" from the nurse's statement that when plaintiff "gets up in the truck he has to get up on his knees and pull himself up." The court stated that the former characterization of plaintiff's condition connoted much less disability than the latter. (178 Ill. App. 3d at 13.) Also, despite there having been ample evidence to support defendant's view that the accident never occurred, plaintiff was a key witness testifying about a material issue. The court held that this improper impeachment in this kind of situation warranted a new trial. (178 Ill. App. 3d at 14-15.) Therefore, considering all these factors, the appellate court held that the trial court did not

abuse its discretion in granting plaintiff's motion for a new trial. 178 Ill. App. 3d at 17.

## ANALYSIS

We disagree with the reasoning of the appellate court, and therefore reverse. We hold that plaintiff waived his claims of prejudicial error when he failed to object to defendant's references to the nurse's note during the trial. We further hold that, because any error which resulted from any references to the nurse's note was harmless, the trial judge's grant of a new trial was an abuse of discretion. We also hold that, while the defendant's reference to plaintiff's failure to call a certain witness was improper, in light of the rest of the evidence, this misconduct was not grievous enough to warrant a new trial.

Plaintiff's argument turns on his contention that he had no reason to object to defendant's remarks regarding the nurse's note because he expected defendant to call Dr. Jemsek's nurse as a witness to authenticate the contents of the note. Both the trial judge and the appellate court held that defendant should have called Dr. Jemsek's nurse, Ms. O'Dell, because once defendant asked plaintiff about the prior inconsistent statement in the nurse's note, it was required to offer proof of the alleged impeaching statements. (178 Ill. App. 3d at 12, citing *Schoolfield v. Witkowski* (1964), 54 Ill. App. 2d 111, 125.) However, plaintiff waived any claim of prejudicial error in this instance because where evidence is admitted subject to later connection, and the proof of that evidence is never presented, the party that opposes it must both object to the lack of proof at the time the evidence is introduced and later renew that objection by making a timely motion to strike the evidence. (*Kloster v. Markiewicz* (1981), 94 Ill. App. 3d 392, 393; *Balestri v. Highway & City Transportation, Inc.* (1978), 57 Ill.

App. 3d 669, 674; 6 J. Wigmore, Evidence §1871 (Chadbourn rev. 1976); see *Johnson v. Hoover Water Well Service, Inc.* (1982), 108 Ill. App. 3d 994, 1006-07.) Plaintiff failed to follow either procedure. Therefore, even if we were to characterize defendant's use of the nurse's note at trial and his failure to call the nurse to authenticate the contents of the note as error, plaintiff effectively waived any claim that such an error was prejudicial.

Further, plaintiff's withdrawal of the objection in Dr. Jemsek's deposition reveals a calculated strategy for the jury to hear particular references to the nurse's note. Even if a party objects to certain evidence, if he fails to object to similar evidence that the trial court admitted without objection, he waives any claim that the evidence to which he did object was admitted erroneously. (*People v. Allen* (1959), 17 Ill. 2d 55, 61; *Bullard v. Barnes* (1983), 112 Ill. App. 3d 384, 392; *In re Carthen* (1978), 66 Ill. App. 3d 780, 785.) Consequently, despite the trial court's sustaining plaintiff's objection to defendant's reference to the nurse's note in closing argument, plaintiff cannot complain of any harm caused by erroneous references to the same evidence which he failed to object to. Also, where a party himself introduces or elicits certain evidence, he cannot later complain. (*Casson v. Nash* (1978), 74 Ill. 2d 164, 171-72.) It was plaintiff who introduced into evidence the reference to the nurse's note contained in Dr. Lack's deposition. Thus, plaintiff would have no support for his claim that other references to the same evidence were prejudicial to him. Therefore, because plaintiff failed to object to several of the references to the nurse's note at the time they were read into evidence and failed to move to strike those references, we hold he has waived his ability to object to this evidence for the first time in his post-trial motions (*Delany v. Badame* (1971), 49 Ill. 2d 168, 178), and has waived any claim of prejudicial error regarding those references.

The appellate court, however, was correct in noting that this court recognizes an exception to the doctrine requiring a party to object to an error during trial in order to preserve it for review. (178 Ill. App. 3d at 9, citing *Underwood*, 34 Ill. 2d at 371; see *People v. Carlson* (1980), 79 Ill. 2d 564, 577.) This exception, generally known as the plain error doctrine, finds greater application in criminal cases. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §103.10 (4th ed. 1984); see 107 Ill. 2d R. 615(a).) However, conditions existing in a civil case may invoke the exception as well.

This court first applied a plain error type of review standard in a civil case in *Belfield v. Coop* (1956), 8 Ill. 2d 293. In that case, we stated:

> "If prejudicial arguments are made without objection of counsel or interference of the trial court to the extent that the parties litigant *cannot receive a fair trial and the judicial process stand without deterioration,* then upon review this court may consider such assignments of error, even though no objection was made and no ruling made or preserved thereon." (Emphasis added.) (*Belfield*, 8 Ill. 2d at 313.)

After examining this court's historical application of the *Belfield* exception, we hold that the case at bar does not fit into the exception.

The appellate court in this case emphasized the error which resulted from defendant's failure to call Ms. O'Dell to verify the nurse's note. The court reasoned that, despite plaintiff's failure to object to every question involving a reference to the nurse's note, defendant's refusal to call the nurse, which it apparently knew to be the only proper way to admit any evidence concerning the note, deprived plaintiff of a fair trial. 178 Ill. App. 3d at 9.

The appellate court's analysis is faulty. This court has held that, in applying the *Belfield* test, we will strictly apply the waiver doctrine unless the prejudicial error in-

volves flagrant misconduct or behavior so inflammatory that the jury verdict is a product of biased passion, rather than an impartial consideration of the evidence. (See *Bruske v. Arnold* (1969), 44 Ill. 2d 132, 137 (the "rule of waiver would not apply where the argument of counsel is so inflammatory and prejudicial as to deteriorate the judicial process"); *Sommese v. Maling Brothers, Inc.* (1966), 36 Ill. 2d 263, 266-68 (plaintiff's counsel argued in closing, without objection, that jury should disregard a special interrogatory that operated as a "safeguard against a jury awarding damages out of passion or prejudice or sympathy"; new trial awarded); *Underwood*, 34 Ill. 2d at 370-71, 373 (plaintiff's counsel asked witness a series of questions regarding lost limbs when case involved an eye injury; new trial awarded); *Muscarello v. Peterson* (1960), 20 Ill. 2d 548, 553-55 (insurance company altered evidence relating to claim by a minor; court, in awarding a new trial, characterized this conduct as "so prejudicial and reprehensible that the other party [could] not receive a fair trial and the judicial process [could not] stand without deterioration"); *City of Quincy v. V.E. Best Plumbing & Heating Supply Co.* (1959), 17 Ill. 2d 570, 577 (in eminent domain proceeding, plaintiff's argument that he could not be awarded certain expenses and losses, but that jury, in calculating damages, should assure that plaintiff was no poorer than he was before the taking, was so prejudicial as to require new trial); *City of Chicago v. Pridmore* (1957), 12 Ill. 2d 447, 451-53 (plaintiff asked improper questions regarding taxes on the property in question, and in closing argument aggravated the error by mischaracterizing defendant's tax situation and making highly inflammatory remarks regarding a witness' character; new trial awarded); *Belfield*, 8 Ill. 2d at 312 (plaintiff's counsel referred to defendants as "thieves," "usurpers," and "defrauders," suggested defense counsel was disreputable, and hinted that jury should decide for plain-

tiff because he was a former judge; new trial awarded).) In each of these instances, where a new trial was awarded, the prejudicial error was so egregious that it deprived the complaining party of a fair trial *and* substantially impaired the integrity of the judicial process itself.

The situation in the case at bar is distinguishable from *Belfield* and its progeny. The cases where we applied the *Belfield* standard and awarded a new trial involved blatant mischaracterizations of fact, character assassination, or base appeals to emotion and prejudice. In this case, however, defendant presented the nurse's note unembellished by inflammatory commentary, instead choosing to use the contents of the note itself as evidence that impugned plaintiff's veracity. Plaintiff also chose not to object to two specific references in the doctors' depositions because one instance favorably interpreted the nurse's comments, and the other called the existence of the note into question. The statement defendant made in closing was objected to by plaintiff, and the trial judge sustained the objection and properly instructed the jury not to consider the remarks of counsel as evidence. Therefore, the jury was allowed to consider and interpret the contents of the nurse's note in the context of the other evidence and the adversarial explanation of that evidence by the counsel for both parties. Thus, we hold that the comments regarding the nurse's note did not rise to the level of offensiveness that the *Belfield* exception was designed to address. See *Bruske*, 44 Ill. 2d at 137-39 (statements made in closing by defense counsel were improper, but did not rise to level of prejudice contemplated in *Belfield*).

We further hold that the trial court's award of a new trial in this case was an abuse of discretion, because any errors that occurred in connection with the presentation of evidence involving the nurse's note failed to prejudice plaintiff. Consequently, even if plaintiff properly objected

to each reference defendant made to the nurse's note during the trial and preserved the alleged errors for review, we characterize the references to the note as technical violations, and not a sufficient basis for granting a new trial because their admission did not affect any of plaintiff's substantial rights. (107 Ill. 2d R. 615(a); see *People v. Lindgren* (1980), 79 Ill. 2d 129, 141; *Kotteakos v. United States* (1946), 328 U.S. 750, 757, 90 L. Ed. 1557, 1562, 66 S. Ct. 1239, 1244.) Because there was substantial evidence at trial showing that plaintiff had suffered severe back injuries due to events not connected with the accident in the case at bar, we conclude that, even without the references to the nurse's note, the jury would have reached the same result. *People v. Warmack* (1980), 83 Ill. 2d 112, 128-29.

The appellate court in the case at bar emphasized that the crucial issue in this case was plaintiff's credibility (178 Ill. App. 3d at 8), and that any improper impeachment, by impugning this credibility, impinged on plaintiff's right to a fair trial. Specifically, the court held that plaintiff's answer to the question involving his prior statements to the nurse was equivocal, thus requiring defendant to produce Ms. O'Dell to verify her comments in the note. (178 Ill. App. 3d at 11-12.) It also held that the differences in terminology used by Dr. Jemsek and the nurse to describe plaintiff's condition two days before the incident in question was so great as to make the nurse's comment prejudicial. The doctor stated that plaintiff had to "flex his knees" whenever he climbed into a truck. The nurse's note said he "has to get up on his knees and pull himself up" in order to get into a truck. The court characterized the latter as describing a much more severe condition. 178 Ill. App. 3d at 13.

The appellate court's conclusions regarding the defendant's use of the nurse's note fails to put this evidence in the context of the rest of the evidence pre-

sented at trial. The jury was properly aware of plaintiff's history of severe back problems before the incident in question. (178 Ill. App. 3d at 17 (Welch, J., dissenting).) This, combined with the complete line of questioning in plaintiff's evidence deposition, did more to call plaintiff's credibility into question than did the isolated references to the nurse's note. The following are examples of the questions and answers in that deposition:

"Q. Did you ever treat with Dr. Jemsek for your back prior to March 9th?

A. He's been [my] family physician for as long as I can remember, but I don't recall any, you know, any back problems. ***

Q. Do you recall that he ever examined you at a hospital for your back in 1976, particularly April of 1976?

A. Not that I recall, no.

Q. All right. You wouldn't deny that you were treated by him at that time for your back, would you?

A. I wouldn't deny it, but, you know—like I say I don't recall it at all. ***

Q. Did you tell him you had a great deal of difficulty in raising both legs without a great deal of pain in the upper thighs?

A. I don't remember the thigh part, but I'm not saying I didn't. Like I say, I don't remember. ***

Q. Do you recall going to Dr. Jemsek's office on March 7th, just a couple days before the hood accident?

A. No. I don't remember.

Q. Okay. Do you recall complaining that on March 7th that you were fine as long as you were sitting or lying down, but when you tried to get up and move around, you had trouble?

A. No. I don't remember that.

Q. Did you ever remember telling anyone that you had to flex your knees when you got into the truck?

A. No.

Q. Do you recall if you were limping on that date?

A. Not that I remember, no."

We conclude that, because plaintiff failed to remember anything regarding his back problems prior to the incident in question, while Dr. Jemsek's deposition and records clearly indicate plaintiff had a history of severe back problems, the appellate court's theory that the nurse's note was the only factor that affected plaintiff's credibility in the eyes of the jury is illogical.

Viewing plaintiff's evidence deposition as a whole, we also find that the appellate court's holding that defendant was required to call Ms. O'Dell to the stand to verify the authenticity of the nurse's note was incorrect. We need not determine whether it was improper for defendant to fail to call Ms. O'Dell in connection with plaintiff's equivocal response to the question regarding his statement as contained in the nurse's note (see *Purrazzo*, 95 Ill. App. 3d at 896 (" 'Extrinsic evidence, either oral or documentary, need not be introduced if the witness unequivocally admits making the out-of-court statement, but if the witness denies or fails to recall making the prior statement, then it is incumbent upon the examining party to offer evidence of that statement. [Citations.]' " (quoting *Crespo v. John Hancock Mutual Life Insurance Co.* (1976), 41 Ill. App. 3d 506, 520)); but see *Vancil v. Fletcher* (1967), 90 Ill. App. 2d 277, 284 ("In view of the equivocal answers, it was the defendant's [*sic*] option to offer impeaching testimony if they so desired")) because, even if the failure to call Ms. O'Dell was an error, it did not prejudice the plaintiff. (*J.L. Simmons Co. ex rel. Hartford Insurance Group v. Firestone Tire & Rubber Co.* (1985), 108 Ill. 2d 106, 115-16; see *People v. Allen* (1959), 17 Ill. 2d 55, 63 (reversal not required where there is no proof of prior statement when there is positive evidence of guilt).) As we have already noted, there was other substantial evidence at trial that plaintiff had a history of severe back trouble before the accident and suffered a second severe

back strain due to an incident three months after the accident in the case at bar. Quite apart from the isolated references to the nurse's note, plaintiff's own responses to questions, as contained in his deposition, reveal an ostensibly faulty memory regarding these back problems. We therefore hold that even if defendant's failure to call the nurse to substantiate the contents of the note was an error, the effects of the error were harmless.

Moreover, even if we were to agree with the appellate court that the failure to call the nurse was otherwise reversible error, we have already observed that plaintiff failed to object to the references to the nurse's note at the time the evidence was admitted and failed to preserve any such objection in a motion to strike. Thus, plaintiff waived all claims of error in connection with defendant's failure to call Ms. O'Dell to verify the contents of the nurse's note (see *Kloster*, 94 Ill. App. 3d at 393; *Balestri*, 57 Ill. App. 3d at 674), and for reasons already stated, the *Belfield* exception to waiver is inapplicable to this case.

We also find insubstantial the distinction the appellate court made between the statements of Dr. Jemsek and the contents of the nurse's note. In our opinion, the doctor's statement describing plaintiff "flexing" his knees to get into a truck, and the nurse's note stating that he had to "get up on his knees and pull himself up," arguably describe the same physical procedure and the same type of disability. (See 178 Ill. App. 3d at 18 (Welch, J., dissenting).) Even if this were not so, the jury heard Dr. Jemsek's interpretation of plaintiff's condition two days prior to the alleged accident, as well as his characterization of the nurse's comments. Plaintiff chose not to object to this information because it was favorable to his case. Therefore, the jury's conclusions, after hearing this testimony, could not have been unfairly prejudiced by the contents of the nurse's note.

We therefore conclude that, taking the evidence of the contents of the nurse's note in the context of all the evidence presented at trial, the trial court abused its discretion when it granted plaintiff's motion for a new trial.

Finally, we address plaintiff's contention that it was reversible error for the trial judge to overrule plaintiff's objection to defendant's statement in closing argument regarding plaintiff's inability to call Kevin Crouch as a witness. Although plaintiff presented this issue to the appellate court, the court did not address it in its opinion in this case. (178 Ill. App. 3d at 7.) Plaintiff also included this contention in his motion for a new trial, but the trial court only considered the issues surrounding the nurse's note when it granted the motion. Therefore, this issue is properly before this court on appeal. See, *e.g.*, *City of Chicago v. Joyce* (1967), 38 Ill. 2d 368, 372 (issue not presented to or considered by lower court cannot be considered on review for first time).

It is improper for a party to draw attention to an opponent's failure to call a witness when that witness is not under the opponent's control. (*Sawicki v. Kim* (1983), 112 Ill. App. 3d 641, 646; *Wetherell v. Matson* (1977), 52 Ill. App. 3d 314, 319.) Because Crouch was out of the State and unavailable by subpoena or accountability at the time of the trial, he was clearly not under plaintiff's control. Therefore, defendant's comments in closing regarding Crouch were improper.

However, we hold that this error was harmless. The appellate court incorrectly put its focus entirely on the issue of plaintiff's credibility. This is not to say that plaintiff's credibility was not an important issue in the trial. As we have already noted, plaintiff's professed inability to recall a history of severe back problems before the incident in question already impugned his credibility. Also, the testimony of plaintiff's co-workers tended to refute his present claim. After examining the totality of the evi-

dence, especially the evidence contained in the two doctors' depositions regarding plaintiff's history of severe back problems related to injuries not connected to the incident involving the defective hood hinge, we conclude that any speculation by the jury about Mr. Crouch's testimony would not have made any difference. In other words, no reasonable jury would have reached a contrary verdict. This satisfies our higher standard for directing a verdict or granting a judgment *n.o.v.* (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 509-10.) Consequently, the jury verdict in the case at bar certainly satisfies the lower standard reflected in the rule that a trial court should only grant a new trial if the verdict is against the manifest weight of the evidence. (*Jardine v. Rubloff* (1978), 73 Ill. 2d 31, 36-37, 43-44 (contrasting and applying the two standards).) Therefore, even though defendant's counsel's remarks regarding the control of witnesses were improper, the overruling of the objection to those remarks did not amount to reversible error. Rather, the trial court's grant of a new trial was an abuse of discretion. See *Ramseyer*, 110 Ill. App. 3d at 96.

Accordingly, we reverse the judgment of the appellate court and the judgment of the circuit court which granted a new trial, and remand the cause to the circuit court with directions to enter judgment on the jury's verdict.

> *Judgments reversed;*
> *cause remanded with directions.*

JUSTICE CALVO took no part in the consideration or decision of this case.