(No. 68876.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. EMMALINE WILLIAMS *et al.* (Emmaline Williams, Appellant).

*Opinion filed September 26, 1990.—Rehearing denied November 30, 1990.*

2

[redacted]

4

Gary Ravitz, of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Cecil A. Partee, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb, James E. Fitzgerald and

Gayle L. Terry, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CLARK delivered the opinion of the court:

On December 4, 1986, appellant, Emmaline Williams, was convicted in the circuit court of Cook County of indecent liberties with a child (Ill. Rev. Stat. 1983, ch. 38, par. 11—4(a)(1)). Her husband and codefendant, Roy Williams, who is not a party to this appeal, was convicted at the same trial of rape (Ill. Rev. Stat. 1983, ch. 38, par. 11—1(a)) and indecent liberties with a child (Ill. Rev. Stat. 1983, ch. 38, par. 11—4(a)(1)). Both appellant and codefendant were represented at trial by the same attorney. The appellate court, with one justice dissenting, affirmed. (182 Ill. App. 3d 598.) We granted appellant's petition for leave to appeal (107 Ill. 2d R. 315(a)).

The State introduced evidence at trial to establish the following. Appellant and codefendant adopted complainant, then 11 years old, in 1983. Appellant and codefendant lived in a house in Chicago with their daughter, several foster children and complainant. Complainant's bedroom was located on the second floor of the residence. On April 1, 1984, complainant went to bed at approximately 9 p.m. She was awakened from her sleep later that evening by appellant's calls to her from a bathroom on the first floor of the residence. Complainant went to appellant in the bathroom. Appellant asked complainant to do a "favor" for her, to which complainant agreed.

Appellant led complainant from the bathroom to the bedroom appellant shared with codefendant on the first floor of the residence. Codefendant was lying naked on the bed. Appellant closed the bedroom door and told complainant that she wanted her to "do something" with the codefendant. Complainant refused and attempted to leave the bedroom. Appellant prevented her exit from

the bedroom by blocking the bedroom door. Appellant removed complainant's clothing and pulled complainant to the bed despite complainant's protests. Appellant then removed her own clothing and got into the bed, placing complainant between herself and codefendant. Codefendant sexually molested and raped complainant while appellant restrained her. Appellant then sexually molested complainant and did so again when complainant went into the bathroom shortly thereafter.

Complainant told appellant's elder daughter of the incidents, but the young woman did not believe complainant. Approximately two weeks after the incidents, complainant described the events in a letter to her former foster mother. Complainant never mailed or otherwise delivered the letter to the woman.

Complainant left appellant's house in June 1985, and returned to her former foster mother's home. Complainant described the incidents of April 1984 to the woman, who then notified the Illinois Department of Children and Family Services (DCFS). After DCFS notified the Chicago police department, Chicago police officer Joseph Lux interviewed complainant and, based upon the information gathered in the interview, appellant was arrested on June 17, 1985.

At police headquarters, Officer Lux advised appellant of her *Miranda* rights. Appellant waived those rights and admitted to Officer Lux and two other police officers that she was present while codefendant and complainant engaged in sexual intercourse. Appellant claimed, however, that the act was consensual.

Codefendant was arrested that evening by Officer Lux and advised of his *Miranda* rights. Codefendant waived those rights and, during an interview with Officer Lux after his arrest, admitted having had sexual intercourse with complainant. Codefendant stated that he and appellant had to restrain complainant during the in-

cident and added that, thereafter, both he and appellant forcibly sexually fondled complainant.

The statement given by codefendant was reduced to writing and read aloud to codefendant. Codefendant then reviewed the statement before signing it. The written statement was later read to appellant, who stated that the events in question must have occurred if codefendant admitted them.

Both appellant and codefendant testified at trial. Both denied making any pretrial admissions and denied engaging in any acts which would constitute the offenses with which they were charged.

Appellant was found guilty of indecent liberties with a child (Ill. Rev. Stat. 1983, ch. 38, par. 11—4(a)(1)) and sentenced to 12 years in the Illinois Department of Corrections. Codefendant was found guilty of rape (Ill. Rev. Stat. 1983, ch. 38, par. 11—1(a)) and indecent liberties with a child (Ill. Rev. Stat. 1983, ch. 38, par. 11—4(a)(1)) and was sentenced to 19 years in the Illinois Department of Corrections. After appellant's conviction was affirmed on appeal (182 Ill. App. 3d at 604), the appellate court granted appellant's petition for a certificate of importance (107 Ill. 2d R. 316). We granted leave to appeal (107 Ill. 2d R. 315).

Appellant argues that her conviction should be reversed for the following reasons. First, appellant argues that a conflict of interest existed between appellant and codefendant which precluded representation by the same counsel during their joint bench trial. Next, appellant argues that she was denied her rights guaranteed by the sixth amendment to effective assistance of counsel and to confront witnesses. Lastly, appellant argues that reversible error occurred when complainant's letter which detailed the crimes with which appellant was charged was allowed into evidence at trial.

The United States Supreme Court has considered conflict of interest in multiple representation in two contexts: where the defendant makes a timely objection to the trial court before or at an early stage in the proceedings (*United States v. Glasser* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457; *Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173) and on appeal where a defendant who failed to object to joint representation at trial demonstrates that the conflict adversely affected his representation (*Cuyler v. Sullivan* (1980), 446 U.S. 335, 64 L. Ed. 2d 333, 100 S. Ct. 1708). The Court addressed the first situation in its decision in *United States v. Glasser*, holding that the sixth amendment right to effective assistance of counsel (U.S. Const., amend. VI) "contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer should simultaneously represent conflicting interests." (*Glasser*, 315 U.S. at 70, 86 L. Ed. at 699, 62 S. Ct. at 465.) Although the Court did not establish that multiple representation is *per se* violative of the sixth amendment, it did state that the trial court's error in appointing one attorney to represent two defendants at trial was one that *"require[d] that the verdict be set aside and a new trial ordered."* (Emphasis added.) *Glasser*, 315 U.S. at 76, 86 L. Ed. at 702, 62 S. Ct. at 468.

In a subsequent discussion of this statement in *Holloway v. Arkansas*, the Court held that a defendant's right to effective assistance of counsel is denied where a trial court, after being advised that a possible conflict of interest exists which could adversely affect the defendants' assistance of counsel, appoints counsel to represent multiple defendants. (*Holloway*, 435 U.S. at 484, 55 L. Ed. 2d at 434, 98 S. Ct. at 1178.) The Court explained that such a denial of a defendant's sixth amendment right can never constitute harmless error because the

"evil [involved in conflict of interest situations] is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process." (Emphasis in original.) (*Holloway*, 435 U.S. at 490, 55 L. Ed. 2d at 438, 98 S. Ct. at 1182.) The Court held that a defendant is not required to show how a conflict of interests "prejudiced him in some specific fashion" because "it would be difficult to judge *** the impact of a conflict on the attorney's representation of a client." (*Holloway*, 435 U.S. at 490-91, 55 L. Ed. 2d at 438, 98 S. Ct. at 1182.) The defendant need not show that he in fact suffered prejudice as a result of the conflict. *Holloway*, 435 U.S. at 490-91, 55 L. Ed. 2d at 438, 98 S. Ct. at 1182.

In *Cuyler v. Sullivan*, the Court resolved two issues that had been expressly reserved in *Holloway*. First, the Court held that a State trial judge need not inquire into the propriety of multiple representation where no party lodges an objection to such representation unless there are "special circumstances" in the case that the trial judge "knows or reasonably should know" create a conflict. *Cuyler*, 446 U.S. at 347, 64 L. Ed. 2d at 346, 100 S. Ct. at 1717.

The second issue left unresolved by *Holloway* was whether a defendant who failed to raise an objection to multiple representation at trial can establish ineffective assistance of counsel on appeal by showing that a *possibility* of a conflict existed at trial. (*Cuyler*, 446 U.S. at 345, 64 L. Ed. 2d at 344-45, 100 S. Ct. at 1716.) The Court in *Cuyler* resolved this question in the negative, holding that "a defendant who raised no objection at trial must demonstrate that an *actual* conflict of interest adversely affected his lawyer's performance." (Emphasis added.) (*Cuyler*, 446 U.S. at 348, 64 L. Ed. 2d at 346-47, 100 S. Ct. at 1718.) That is, "the defendant must point

to some specific defect in his counsel's strategy, tactics, or decision making attributable to the conflict." (*People v. Spreitzer* (1988), 123 Ill. 2d 1, 18.) The defendant need not, however, "demonstrate prejudice in order to obtain relief." *Cuyler*, 446 U.S. at 349-50, 64 L. Ed. 2d at 347, 100 S. Ct. at 1719.

With these principles in mind, we now turn to an examination of the instant case. At trial, appellant did not raise any objections or indicate any concerns about possible conflicts in the joint representation of appellant and codefendant. The issue of a conflict between appellant's and codefendant's interests was first raised in the final sentencing hearing on December 30, 1986, in a motion for new trial filed by appellant's appellate counsel. As noted above, trial courts have no independent duty, "absent special circumstances," to initiate inquiries into the propriety of multiple representations, and appellant does not argue that such "special circumstances" existed in this case. We conclude, therefore, that not having raised an objection in the trial court to the joint representation, appellant must now demonstrate an "actual conflict of interest [and how it] adversely affected [her] lawyer's performance." *Cuyler*, 446 U.S. at 348, 64 L. Ed. 2d at 346-47, 100 S. Ct. at 1718.

Although appellant vigorously maintains that trial counsel was operating under a conflict of interest, her argument is composed of speculative allegations and conclusory statements, neither of which are sufficient to establish ineffective assistance of counsel. (See *Spreitzer*, 123 Ill. 2d at 22-23.) Appellant does not point to any *actual* conflict of interest or demonstrate that such a conflict had any effect on her counsel's performance. Nowhere, for instance, does appellant argue that trial counsel could or should have advanced a " 'lesser culpability' " argument on behalf of appellant (see *Burger v. Kemp* (1987), 483 U.S. 776, 784, 97 L. Ed. 2d 638, 651,

107 S. Ct. 3114, 3121), and further, there is no evidence in the record that reveals trial counsel affirmatively avoided this argument out of deference to codefendant's interests. Likewise, appellant does not maintain that trial counsel failed to negotiate a plea bargain with the State to receive a lesser charge against the appellant in exchange for her cooperation. See *Burger*, 483 U.S. at 785-86, 97 L. Ed. 2d at 652, 107 S. Ct. at 3121.

The most specific allegation of conflict appellant makes is her statement that the conflict in this case "was manifested by [codefendant's] testimony that [appellant] had back problems." At trial, the State argued that a reason appellant participated in the crimes was because appellant had back problems which prevented her from having sex with her codefendant-husband. Appellant, however, testified that she did not have any back problems in April 1984 (the time that the crimes occurred) and codefendant testified on cross-examination that although both he and appellant had back problems on occasion, he could not recall whether appellant had any back problems at the time the crimes occurred.

Appellant argues that because codefendant's testimony undermined her claim that she did not have back problems in April 1984, counsel should have raised questions about codefendant's credibility through cross-examination. Appellant maintains that because of the alleged conflict of interest, counsel could not engage in such cross-examination.

We reject appellant's argument because we are not persuaded that codefendant's testimony undermined appellant's claim. Appellant testified that she did not have back problems in April 1984, while codefendant testified that he did not know if appellant had back problems in April 1984. As such, there was no contradiction between appellant's and codefendant's testimonies about which counsel should have cross-examined codefendant; code-

fendant's testimony neither supported nor undermined appellant's claim.

The appellate court opinion addressed the question of whether a conflict of interest arose in this case out of the fact that both appellant and codefendant made pretrial statements implicating each other. (182 Ill. App. 3d at 603.) Although it is not entirely clear from the appellate court's opinion, it appears that the question was raised by codefendant, who was a party to the appeal below. In any event, because appellant has not raised the question before this court, we decline to address it. (See *Taylor v. St. Clair* (1974), 57 Ill. 2d 367; see also *Dineen v. City of Chicago* (1988), 125 Ill. 2d 248.) We therefore conclude that appellant has failed to establish "that an actual conflict of interest adversely affected [her] lawyer's performance." *Cuyler*, 446 U.S. at 348, 64 L. Ed. 2d at 346-47, 100 S. Ct. at 1718.

We turn now to appellant's argument that she was denied her constitutional right to a fair trial by the admission of complainant's letter into evidence, which letter appellant argues is hearsay. Appellant argues that this error constitutes reversible error. The appellate court concluded that the letter was simply cumulative evidence and found no reversible error in its admission. (182 Ill. App. 3d at 603.) We conclude that appellant waived this issue for purposes of appeal by failing to object at trial and by failing to raise the issue in her post-trial motion. *People v. Enoch* (1988), 122 Ill. 2d 176; see also 107 Ill. 2d R. 366(b)(2)(iii).

The law is well settled that the failure to object at trial to the admissibility of evidence and the failure to complain of the alleged error in a post-trial motion results in waiver of the issue for purposes of appeal. (*Enoch*, 122 Ill. 2d at 186; see also 107 Ill. 2d R. 366(b)(2)(iii).) The only exception to the waiver rule is where the complained-of error constitutes plain error.

(*Enoch*, 122 Ill. 2d at 190-91.) Moreover, the failure to object to hearsay during trial not only waives the issue on appeal, but allows such evidence to be considered by the trier of fact and to be given its natural probative effect. (*People v. Collins* (1985), 106 Ill. 2d 237, 263.) In the instant case, appellant failed to object to the admission of the letter at trial and failed to allege error in a post-trial motion. In so doing, appellant did not preserve the issue of the letter's admissibility for appeal.

Notwithstanding appellant's waiver of this issue, we will consider the admissibility of the letter into evidence in response to appellant's argument that trial counsel's failure to object to its admission amounted to ineffective assistance of counsel.

In *People v. Robinson* (1978), 73 Ill. 2d 192, 195, this court affirmed defendant's convictions for rape, armed robbery and deviate sexual assault. The defendant argued that the victim's statement, entered into evidence through the testimony of other witnesses, did not fall under any exception to the hearsay rule and was therefore inadmissible hearsay. (*Robinson*, 73 Ill. 2d at 199.) Defendant argued that the admission of the statement constituted reversible error.

This court agreed that the hearsay statement should not have been admitted, but held that the hearsay revelations concerning the crime and the identity of the assailant did not amount to reversible error. (*Robinson*, 73 Ill. 2d at 200.) This court observed that there was no fact introduced by the State which was not later corroborated by the complainant's testimony. (*Robinson*, 73 Ill. 2d at 200.) We conclude the same in the instant case.

In her brief to this court, appellant argues that complainant testified that the motive for the sexual assault by appellant and codefendant was that appellant was unable to have sexual intercourse with codefendant as a result of a back injury. Appellant notes that complain-

ant's letter, however, states that appellant and codefend-
ant engaged in intercourse at the time of the crimes,
thereby contradicting complainant's testimony.

We note initially that appellant fails to indicate in her
brief that the testimony regarding appellant's inability to
have sex with codefendant pertained to an entirely sepa-
rate sexual assault that occurred in May 1984 and was
introduced at appellant's sentencing hearing. Complain-
ant's letter, on the other hand, recounted the sexual as-
sault which is the basis for appellant's conviction and
which took place in April 1984. Complainant's testimony
therefore does not contradict her handwritten letter.

Assuming that the letter did indeed conflict with the
portion of complainant's testimony pertaining to the con-
dition of appellant's back, we fail to see how this fact
would support appellant's claim that she was prejudiced
by the letter's admission. To the contrary, to the extent
the letter is inconsistent with the State's motive theory
in this case, the letter's admission helped rather than
prejudiced appellant's defense.

We further note admission of the letter did not consti-
tute reversible error because, with the possible exception
of the alleged conflict pertaining to the condition of ap-
pellant's back, the facts set forth in the letter were cor-
roborated by complainant's testimony. (See *Robinson*, 73
Ill. 2d at 200.) Furthermore, appellant was able to cross-
examine the maker of the hearsay statement. As this
court observed in *Robinson*, "[a]side from the unsworn
and sometimes cumulative nature of hearsay evidence,
*** the main rationale underlying its exclusion, is the
opposing party's inability to test the real value of the
testimony by exposing the source of the assertion to
cross-examination." (*Robinson*, 73 Ill. 2d at 200.) In the
instant case, defense counsel had an opportunity to and
did in fact cross-examine complainant. We therefore find
no reversible error in the admission of the letter.

We turn now to appellant's claim that she was denied effective assistance of counsel under the two-part test of *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052. Under the first prong of the *Strickland* test, a defendant must show that trial counsel's performance "fell below an objective standard of reasonableness." (*Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) To establish this first prong, a defendant must do more than make a general, conclusory allegation of ineffectiveness. Rather, the defendant must identify with specificity "the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." (*Strickland*, 466 U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066.) Furthermore, the defendant must overcome the "strong presumption" that the tactics used by counsel were "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.

The second prong of the *Strickland* test requires that a defendant demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

In the instant case, appellant has presented us with a myriad of allegations and conclusions regarding counsel's performance. With few exceptions, however, appellant has failed to identify the specific acts or omissions which "are alleged not to have been the result of *** professional judgment." (*Strickland*, 466 U.S. at 690, 80 L. Ed. 2d at 695, 104 S. Ct. at 2066.) For example, appellant argues that trial counsel "entirely failed to subject the prosecution's case to meaningful adversarial testing" and that "trial counsel *** objected not often enough," objecting "a grand total of six times." Neither allegation

is supported by references to specific instances where trial counsel should have acted differently. As such, neither of appellant's allegations establishes ineffective assistance of counsel.

Appellant makes a number of other unsubstantiated allegations of ineffectiveness. We need not discuss the merits of each of these individual allegations other than to note that, as with the two examples cited above, appellant fails to support her allegations with any specific instances where counsel should have acted differently. Instead, we will address only those few instances in which appellant's claim of ineffectiveness is made with any specificity.

Appellant argues that counsel's failure to object to the admission of complainant's letter was prejudicial to her defense. Because we have already concluded that admission of the letter, if questioned at all, did not amount to reversible error, we find no merit in appellant's claim. Likewise, our conclusion that the contents of complainant's letter were merely cumulative evidence disposes of appellant's claim that the fact trial counsel was unaware of the existence of the letter was an impairment of her right to effective assistance of counsel. Although we agree that a thorough preparation for trial includes familiarity with a case file, we do not believe that because trial counsel in the instant case was unfamiliar with and claimed never to have seen complainant's letter prior to trial, appellant's defense received ineffective assistance of counsel. As we noted above, there was nothing contained in complainant's letter that was not repeated in her testimony. Even if he had been aware of the letter's contents well in advance of the trial, counsel would not have had any new evidence that would or could have changed the outcome of the trial. Moreover, complainant testified to the contents of the letter and was available for and was in fact cross-examined by trial counsel. (See

*Robinson,* 73 Ill. 2d at 200.) Appellant's claim, therefore, is without merit.

With regard to appellant's exception to counsel's general failure to object to testimony and evidence ("Counsel's *** 10-page cross examination *** [is] indicative of his ineffective assistance"), we note that effective advocacy is not measured by the number of objections raised or the number of pages of cross-examination. Appellant's argument that .the sheer number of objections reveals counsel's ineffectiveness is without merit.

Appellant argues that trial counsel should have objected to the reference in the State's closing argument to appellant and codefendant's plan to open an out-of-State business. Trial counsel objected to the reference at trial, which objection was sustained. We conclude that trial counsel's failure to repeat the objection during the State's closing argument had no prejudicial effect on appellant's defense, given the collateral nature of the matter on the issue before the trial court.

Appellant argues that trial counsel's failure to call appellant's daughter, Tanya Bergen, as a defense witness was another example of trial counsel's ineffectiveness. Complainant testified that immediately after being sexually assaulted by appellant and codefendant, she told Tanya what had just taken place. Complainant testified that " 'I told [Tanya] what happened and she didn't believe me.' " Appellant argues that trial counsel should have had Tanya testify as a defense witness based on complainant's testimony that "Tanya thought [complainant] was a liar." Complainant did not in fact testify that Tanya thought she was "a liar." Complainant's testimony that Tanya did not believe her story may have simply been Tanya's understandable incredulity at the nature of the crimes, especially in light of the fact that complainant was alleging the crimes were committed by Tanya's parents. We are in no way persuaded that trial

counsel's failure to call Tanya as a witness was evidence of his ineffectiveness and therefore conclude that this is another of appellant's unsubstantiated arguments.

Appellant argues that trial counsel failed to effectively cross-examine complainant through the use of leading questions. While use of leading questions is allowed and, in fact, may be expected in examining a witness on cross-examination, and while this technique may lend control to the attorney examining the witness, we must presume that trial counsel's failure to exercise this style of questioning was a result of "sound trial strategy." (*Strickland,* 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.) Appellant has failed to overcome this presumption. Likewise, we conclude that the fact trial counsel chose not to use complainant's letter as a source of impeachment, which appellant cites as an example of ineffective assistance of counsel, was a reasonable defensive tactic. Other than the alleged inconsistency between complainant's testimony and the letter concerning appellant's ability to have sex with codefendant, we fail to find examples of where the contents of the letter in fact impeached complainant's testimony.

Appellant's next argument is that trial counsel should have introduced evidence in the form of testimony from complainant's seventh- and eighth-grade teachers saying that complainant was an "inveterate liar." Appellant bases this argument upon the fact that two letters were introduced at appellant's sentencing hearing on December 30, 1987, in which complainant's seventh- and eighth-grade teachers spoke about complainant's behavior at school. As we shall explain, we conclude that such testimony would have been inadmissible.

A witness in a criminal case may be impeached by proof of *reputation* for untruthfulness. (*People v. Nash* (1966), 36 Ill. 2d 275; *People v. Melnick* (1916), 274 Ill. 616; M. Graham, Cleary & Graham's Handbook of Illi-

nois Evidence §608.2 (5th ed. 1990).) In all cases, the proper procedure to introduce evidence of truthfulness is to ask the witness whether he knows the general reputation of the defendant's truthfulness in the neighborhood in which the defendant lives or at his workplace. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence §608.3 (5th ed. 1990).) Where a trait of character, such as truthfulness, is at issue, opinion testimony is not permitted. (*People v. Moretti* (1955), 6 Ill. 2d 494; *People v. Willy* (1921), 301 Ill. 307; M. Graham, Cleary & Graham's Handbook of Illinois Evidence §405.2 (5th ed. 1990).) The letters introduced at the sentencing hearing are the opinions of only the individual teachers. There is nothing in the contents of either letter to indicate that complainant's character for truthfulness was ever discussed between the two teachers or among any of complainant's other teachers. Clearly, testimony from these teachers as to their opinion of complainant's character for truthfulness would not have been allowed at trial. Accordingly, we reject appellant's claim that trial counsel's failure to introduce this evidence impaired her defense.

In her brief to this court, appellant states that "counsel also suggested during his cross-examination of [complainant] that a hospital examination proved she had not been penetrated, but [trial counsel] failed to produce any supporting medical records or hospital personnel. Inasmuch as these records were readily discoverable and may have affected the outcome of the case, counsel's failure to produce them cannot be easily or cavalierly dismissed." Appellant argues that trial counsel's failure to produce these records resulted in prejudicial error. Appellant's argument is based on the assumptions that (1) the records and personnel exist and that (2) examination of the records and testimony by the hospital personnel would corroborate appellant's claims that complain-

ant was not sexually molested. Appellant fails to demonstrate, however, that there are either hospital records or personnel indicating that complainant had not been penetrated. (See *People v. Holman* (1989), 132 Ill. 2d 128, 167.) Because appellant has not proven otherwise, this court can only assume that trial counsel's failure to produce such evidence was because the evidence does not exist.

Appellant argues that trial counsel erred by failing to seek a severance. In fact, appellant argues that trial counsel's failure to recognize that a conflict existed between the interests of appellant and codefendant was itself an example of counsel's ineffectiveness. We reject what is essentially an argument that counsel's failure to recognize the conflict was *per se* ineffectiveness; we cannot assume that trial counsel did not make a motion for severance because he did not *recognize* a potential conflict. We will indulge the presumption, which appellant has failed to overcome, that counsel's actions were part of a " 'sound trial strategy' " (see *People v. Caballero* (1989), 126 Ill. 2d 248, 260, quoting *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 294-95, 104 S. Ct. at 2065).

Moreover, appellant neglects to indicate on what basis trial counsel should have made a motion for severance. Both appellant and codefendant testified at trial and denied that they were involved in any sexual misconduct with complainant. Their defenses, therefore, were compatible and we believe that it was a sound trial strategy to present the defenses of the two jointly (" '[a] common defense *** gives strength against a common attack' " (*Spreitzer*, 123 Ill. 2d at 17, quoting *Cuyler*, 446 U.S. at 348, 64 L. Ed. 2d at 346, 100 S. Ct. at 1718)). If appellant believes there is a reason other than conflict of interests for which a severance should have been sought, she has failed to indicate the reason and we are unable to discern one from the record.

Appellant argues that trial counsel should have made a motion to suppress codefendant's pretrial statement. Codefendant made a confession of the crimes recounted by complainant and indicated that appellant had participated in the events in substantially the same manner as complainant had stated.

Appellant adopted codefendant's statement in an oral admission to the police and both the statement and appellant's admission were introduced into evidence at trial. At trial, appellant repudiated her admission, as did codefendant during his testimony.

Appellant cites to no evidence, other than codefendant's uncorroborated testimony that his confession was coerced, that there was a basis for trial counsel to have sought to have appellant or codefendant's pretrial statements suppressed. (See *People v. Hall* (1986), 114 Ill. 2d 376.) Appellant wholly fails to demonstrate the merits of a motion to suppress, and we are unable to derive any from the record before us. Appellant has therefore failed to demonstrate a reasonable probability that the outcome of her trial would have been different had counsel moved to have codefendant's pretrial statement suppressed.

We therefore reject appellant's claim that she was denied effective assistance of counsel under *Strickland*. For the foregoing reasons we affirm the appellate court's decision which affirmed appellant's conviction in the circuit court.

*Affirmed.*