589 N.E.2d 1101 (1992)
226 Ill. App.3d 681
168 Ill.Dec. 701
In the Interest of J.M., M.M., D.M., Minors
(The People of the State of Illinois, Petitioner-Appellee,
v.
William Marquardt, Respondent-Appellant).
No. 3-91-0055.
Appellate Court of Illinois, Third District.
March 26, 1992.
*1102 Joe R. Vespa (argued), Sonnemaker, Sonnemaker & Vespa, Peoria, William F. Morris, Trial Counsel, for William Marquardt.
Rita Kennedy Mertel, State's Attys. Appellate Prosecutor, Ottawa, Kevin W. Lyons, State's Atty., Peoria, John X. Breslin, Deputy Director State's Attys. Appellate Prosecutor, Ottawa, for the People.
Michael W. Heller, Peoria, for Lori H. Minton.
Justice GORMAN delivered the opinion of the court:
This action was brought petitioning the court for the adjudication of wardship in the interest of the minors, J.M., M.M., and D.M. It was alleged in Count I of the petition that respondent William Marquardt sexually abused his 2½ year old daughter, D.M., and in Count II that he sexually abused his girlfriend's 12½ year old daughter, J.M. The trial court found both counts proven. We affirm.
During 1985, Lori Minton and her two children, M.M. and J.M., began living with respondent William Marquardt in Peoria. In 1985, D.M. was born to Minton and respondent. On November 24, 1988, Minton and respondent argued heatedly. The police were summoned and respondent left the abode voluntarily. On November 28, 1988, Minton obtained an order of protection against respondent. Respondent also attempted to get custody of D.M. and an order of protection against Minton. The court ordered custody of D.M. to be with each party on alternating weeks. On November 30, 1988, Minton and respondent, per directions from the Department of Children and Family Services (DCFS) child abuse investigator, took D.M. for an examination for possible sexual abuse.
On December 5, 1988, the People filed a petition requesting that D.M., J.M., and M.M. be adjudicated abused minors. In June and July 1989, an adjudicatory hearing was held on the petition. Count I alleged that D.M. was an abused minor because respondent committed a sex offense against her by fondling her vagina on at least one occasion before the summer of 1988. Count II alleged that J.M. was an abused minor because, during the summer of 1988, respondent kissed her neck, touched her breasts, and asked her to have sexual intercourse with him. Count II also alleged that during the summer of 1988, defendant took J.M.'s hand and placed it on his penis; after the minor removed his hand, respondent attempted to repeat his actions.
At the hearing, Susan Wright, a registered nurse, testified that she examined D.M. for possible sexual abuse. Wright testified that she had received no training or certification in sex abuse cases, but had interviewed a number of victims of sexual assault. She stated that she observed no unusual markings or bruises, redness, or tenderness in the vaginal or rectal area of the child. She further testified that she spoke with D.M. alone and asked her if respondent had touched her. She stated *1103 that D.M. told her that respondent had tickled her legs, stomach, and perineal area. D.M. then showed the same areas on a doll and demonstrated a rubbing motion on the perineal area. Wright testified that she asked D.M. if the touching had occurred during bath time. D.M. had said that the touching did not occur during bath time, but while respondent and D.M. were playing and while D.M. was undressed.
Judy Trent, D.M.'s babysitter, testified that, when respondent was in town, D.M. had a diaper rash and vaginal discharge. She also stated that in the spring or summer of 1988, D.M. occasionally woke up screaming and crying and that she had said "no, daddy, no, daddy" in her sleep. Trent also stated that when D.M. was 2 years and 2 months old, she was changing D.M.'s diaper when the minor said that her "butt" hurt. When Trent asked D.M. what was wrong with her "butt", D.M. said "my daddy put his finger in it." Trent also testified that D.M. did not know the difference between "butt" and vagina. She also said that when D.M. made these statements, there was a mucous colored discharge coming from D.M.'s vagina. Trent did not report her findings to DCFS until late November 1988.
J.M. testified that she was 13 years old. She stated that she and respondent did not get along well and often argued. She said that he restricted her to PG-rated movies and he did not approve of her boyfriends or other friends. J.M. also stated that respondent had asked her to model her swimsuit and her mother's lingerie. She further testified that one time respondent took her to a motel in Peoria Heights when he was supposed to be taking her to his mother's house. She stated that respondent said that he had forgotten the key to his mother's house. She further said that they stayed overnight in the motel and that respondent tried to have sexual intercourse with her.
J.M. also testified that one time, after she had taken a bath at respondent's mother's house, she had wrapped herself in a towel and closed all the bedroom doors. Respondent came into the room and put his hand on her breast. She stated that he said something to her at this time, but she could not recall what it was. J.M. testified that another time when respondent and J.M. were at his mother's house, J.M. was sleeping on the floor with D.M. and respondent asked J.M. to massage his stomach. J.M. stated that respondent then picked up J.M.'s hand and put it near his penis. J.M. pulled her hand away and respondent tried to place it on his penis again.
Kathy Corl, a DCFS investigator, testified that she had spoken to J.M. for about half an hour and that J.M. was initially very direct and assertive for a child of her age. Corl further stated that when she asked J.M. if J.M. had been sexually abused, J.M. became very shy and looked uncomfortable; her voice became much softer and she looked down. In an earlier videotaped statement to Corl, which was introduced at the adjudicatory hearing, J.M. had told her about the touching incidents.
Corl also testified as to alleged abuse of D.M. She stated that, immediately after the medical exam for possible sexual abuse, D.M. did not disclose to her that there was any touching. Also, shortly before the hearing, when Corl spoke to D.M., D.M. stated that neither her mother nor her father had touched her private parts.
Respondent also testified at the hearing. He denied ever having fondled J.M.'s breast. He also denied ever having placed J.M.'s hand near his penis. He also stated that the doors to his mother's bedroom had been inoperable since 1976. Respondent offered into evidence a diagram of that part of his mother's house where the alleged touching occurred. He stated that the diagram was made in late November 1989 by an architect who was internationally known. Respondent denied ever having taken J.M. to a motel and denied asking to photograph J.M. in a nightgown. He also denied ever having placed his finger in D.M.'s vagina or rectum. Respondent also testified that in late November 1988 he reported Judy Trent to DCFS for certain day care violations. He reported that Trent had left D.M. in the house by herself on more than three occasions. He also reported that he had discovered that Trent and Minton were colluding to cheat DCFS. *1104 He said that Minton was understating her income and receiving extra daycare benefits and splitting them with Trent. Respondent testified that he had a Bachelor's degree from the University of Maryland and was a few hours short of his Master's degree in social work from Stanford University. He also testified that he had been a Psychologist 1 Correctional Vocational Instructor with the Department of Corrections. This testimony of his education and employment credentials was largely impeached on cross-examination. Respondent offered numerous reputation witnesses to testify to his good reputation for truthfulness, decency, and morality. The court did not allow the testimony of Phillip B. Fleming, a family therapist, and Rick Long, a clinical social worker, who testified in the offers of proof that respondent did not exhibit any of the personality traits or characteristics commonly found in known sex offenders.
At the conclusion of the hearing, the trial judge found that D.M. and J.M. were abused minors. Respondent now appeals.
The first issue is whether the findings that respondent sexually abused D.M. and J.M. are against the manifest weight of the evidence.
Under the Juvenile Court Act, "in any hearing ... proof of the abuse ... of one minor shall be admissible evidence on the issue of the abuse ... of any other minor for whom the respondent is responsible." Ill.Rev.Stat.1989 ch. 37 ¶ 802-18(3). Thus, under a similar, prior provision, the second district upheld a finding of sexual abuse as to one minor daughter even though there was no evidence that she personally was physically molested because there was evidence that the other minor daughter was molested. In Re S.M., (1988) 171 Ill.App.3d 361, 121 Ill.Dec. 507, 525 N.E.2d 565.
Here the trial judge heard J.M., respondent, and the other witnesses testify as to the alleged acts of abuse. He determined that J.M., Wright, and the others were credible witnesses and that respondent was not credible. Moreover, the evidence on the abuse of J.M. can be considered on the question of abuse of D.M. The trial court found that, by a preponderance of the evidence, D.M. and J.M. were abused minors. Given the facts in the record, we cannot say that the trial court's findings of abuse of the minors are against the manifest weight of the evidence.
The second issue respondent raises for review is whether the trial court abused its discretion in excluding the testimony of a therapist and a social worker that respondent did not have the personality traits of a sex offender.
The general rule is that when a character trait is at issue, opinion testimony is not admissible. People v. Williams (1990) 139 Ill.2d 1, 150 Ill.Dec. 544, 563 N.E.2d 431. People v. Wheeler (1991) 216 Ill.App.3d 609, 159 Ill.Dec. 266, 575 N.E.2d 1326. In Wheeler, this court upheld the barring of testimony by two psychologists who intended to testify in defendant's trial for aggravated criminal sexual assault that the defendant did not possess traits consistent with those of a pedophile. Here, the trial court followed existing law. We can find no abuse of discretion in refusing to admit the opinion testimony of the therapist and of the social worker and so affirm the circuit court's ruling.
Affirmed.
BARRY, P.J., and SLATER, J., concur.