Docket No. 92214–Agenda 21–November 2001.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DANIEL RAMSEY, Appellant.

Opinion filed February 7, 2002.

JUSTICE THOMAS delivered the opinion of the court:

At issue is whether the State, in defendant Daniel Ramsey’s first trial, proved beyond a reasonable doubt that he was eligible for the death penalty. We hold that it did.

BACKGROUND

Following a jury trial in the circuit court of Hancock County, defendant was convicted of two counts of first degree murder; three counts of attempted first degree murder; and one count each of aggravated criminal sexual assault, home invasion, and residential burglary. The jury determined that defendant was eligible for the death penalty based on the cold, calculated, and premeditated manner of the crimes. 720 ILCS 5/9–1(b)(11) (West 1996). The jury also concluded that no mitigating factors sufficient to preclude the death penalty existed, and the trial court sentenced defendant to death.

On direct appeal, defendant argued, 
inter alia
, that he was held to the wrong burden of proof for his insanity defense because the public act that raised the burden of proof was passed in violation of the single subject clause of the Illinois Constitution (Ill. Const. 1970, art. IV, §8(d)). See 
People v. Reedy
, 186 Ill. 2d 1 (1999) (invalidating Pub. Act 89–404, eff. August 20, 1995, in its entirety). This court agreed with defendant and reversed his conviction and remanded the cause for a new trial. 
People v. Ramsey
, 192 Ill. 2d 154 (2000).

In the trial court, defendant moved to preclude the prosecution from seeking the death penalty at retrial. Defendant argued that the State failed during the first trial to prove beyond a reasonable doubt that he was death eligible. Thus, allowing the State a second chance to prove his death eligibility would subject him to double jeopardy. Specifically, defendant contended that the State failed to prove beyond a reasonable doubt that he was at least 18 years old when he committed the crimes on July 8, 1996. See 720 ILCS 5/9–1(b) (West 2000).

At the eligibility hearing in the first trial, the State relied on evidence from the guilt phase of the trial to establish defendant’s age at the time of the offenses. Defendant’s adoptive father, Marion Ramsey, testified that defendant was born in 1978 and that the adoption was final in 1979. Ramsey is also defendant’s biological grandfather.

Additionally, the State relied on the testimony of Officer William Petentler of the Illinois State Police. Petentler interviewed defendant after the crimes. When Pententler arrived at the crime scene, defendant was being treated for a large, superficial gash on the back of his head. Defendant received the wound when, after killing his victims, he pointed a shotgun at the back of his head and pulled the trigger.

Petentler testified that defendant led the police to a grain bin in which he had disposed of one of the bodies. Petentler described defendant as being “very alert.” After defendant took the police to the grain bin, they decided to take him to a medical clinic, although there was no fresh blood coming through defendant’s bandage. After defendant was treated, the police took him to the Hancock County jail, where they read him his 
Miranda
 rights and interviewed him. Defendant waived his rights and spoke to the police about the incident. Petentler asked defendant his date of birth, and defendant replied that it was March 30, 1978.

To counter defendant’s and his adoptive father’s statements as to defendant’s birth date, the defense presented the testimony of John Condon, a probation officer with the Ninth Judicial Circuit. Condon testified that he was asked to prepare a presentence investigation report on defendant. Condon requested a criminal history of defendant from the National Criminal Information Center (NCIC). When Condon received the report from the NCIC, he noticed that it had conflicting dates of birth for defendant. In one place, it listed his birthday as March 30, 1978, and in another as March 30, 1979. The defense argued to the jury that Condon’s testimony created a reasonable doubt whether defendant was 18 when he committed the crimes.

Following a hearing, the trial court determined that a rational trier of fact could have concluded beyond a reasonable doubt that defendant was 18 when he committed the crimes. Accordingly, the court denied defendant’s motion to preclude the State from seeking the death penalty. Defendant appealed pursuant to Supreme Court Rule 604(f) (188 Ill. 2d R. 604(f)), which allows appeals to the appellate court from orders denying a motion to dismiss based on former jeopardy. The State moved to have the appeal transferred to this court, as a matter of public interest requiring our prompt adjudication. 134 Ill. 2d R. 302(b). We granted the motion.

ANALYSIS

Defendant argues that, in his first trial, the State failed to prove beyond a reasonable doubt that he was 18 when he committed the murders. Accordingly, defendant contends, the State is precluded under double jeopardy principles from seeking the death penalty at his retrial.

Once either the trial court or a court of review has determined that the evidence was insufficient to prove the existence of a statutory aggravating factor, the State is precluded by double jeopardy principles from seeking the death penalty again. 
People v. West
, 187 Ill. 2d 418, 447 (1999). Before a court can sentence a defendant to death, the State must prove beyond a reasonable doubt that the defendant was at least 18 years old when he committed the offense. 
People v. Holman
, 132 Ill. 2d 128, 161 (1989). In reviewing the sufficiency of the evidence to support a finding of death eligibility, the standard is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements necessary to establish defendant’s death eligibility beyond a reasonable doubt. 
People v. Emerson
, 189 Ill. 2d 436, 474-75 (2000). Determinations of the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence are the trier of fact’s responsibility. 
Emerson
, 189 Ill. 2d at 475.

Defendant apparently misunderstands our standard of review. He explains why he believes the State’s evidence was weak and what divergent inferences a trier of fact could draw from the evidence. The only relevant question, however, is whether, 
viewing the evidence in the light most favorable to the prosecution
, any rational trier of fact could have concluded, beyond a reasonable doubt, that defendant was 18 when he committed the murders. Clearly, a rational trier of fact could so find. Defendant stated in his interview with Petentler that he was born on March 30, 1978. Defendant’s adoptive father, who was also his biological grandfather, testified that defendant was born in 1978, and the adoption was final in 1979. The only other birth date that the defense suggests is possible is March 30, 1979, based on the conflicting evidence in the NCIC report that Condon received. Thus, Marion Ramsey’s testimony that defendant was born in 1978 corroborated the birth date given by defendant: March 30, 1978. Clearly, a rational trier of fact could conclude that defendant and his adoptive father knew defendant’s birth date, and that the alternate birth date listed on the NCIC report was a mistake.

Defendant’s arguments as to why the evidence was insufficient are either misplaced or unconvincing. Defendant argues that his grandfather’s testimony was hearsay. That testimony, however, was procured by the defense. Marion Ramsey made the statement while testifying as a defense witness. Where a party himself introduces or elicits certain evidence, he cannot later complain. 
Gillespie v. Chrysler Motors Corp.
, 135 Ill. 2d 363, 374 (1990). Moreover, the failure to object to hearsay not only waives the issue on appeal, but allows the evidence to be considered by the trier of fact and to be given its natural probative effect. 
People v. Williams
, 139 Ill. 2d 1, 15 (1990). Thus, the hearsay nature of the evidence did not preclude the jury from inferring that defendant’s biological grandfather and adoptive father would know when defendant was born.

As to defendant’s out-of-court statement that he was born on March 30, 1978, defendant first argues that the statement was not reliable because he gave it shortly after shooting himself in the head. Defendant contends that the wound “could have caused confusion when answering Officer Petentler’s questions.” However, defendant points to no evidence in the record suggesting that he was confused. Rather, the evidence showed that the wound was a superficial gash, and that defendant was sufficiently alert to take the police to where he disposed of one of his victims and to discuss the crimes with them. Further, the jury was shown a videotape of an interview defendant had with the police shortly after he gave the statement, and the jury would have been able to view defendant’s demeanor and determine if he appeared to be suffering from any confusion. Defendant has simply not pointed to any evidence that he was confused and did not present medical evidence that a superficial gash to the back of one’s head would undermine one’s ability to remember his birthday.

Defendant also complains that his out of court statement was hearsay. This is true, but the statement was admissible as an admission of a party opponent. 
People v. Kidd
, 175 Ill. 2d 1, 29 (1996) (“The statements at issue were all made by the defendant and, so long as they were relevant to the case, could be introduced against him as admissions of a party opponent”). Defendant was given the 
Miranda
 warnings before he gave the statement, and was thus warned that anything he said in the interview could be used against him at trial. This court held in 
People v. Dalton
, 91 Ill. 2d 22, 29 (1982), that an extrajudicial admission of a defendant’s age was admissible without corroboration to establish an element of the 
corpus
 
delicti
 of indecent liberties with a child. Defendant has offered no compelling reason why the same rule should not apply here. Further, as we noted, once hearsay is properly admitted, the trier of fact is free to give it its natural probative value. It was within the jury’s province to conclude that defendant knew his birthday.

Further, the law generally presumes that a person knows his age. As this court explained in 
People v. Pennell
, 315 Ill. 124, 127 (1924), “[i]t is, of course, recognized in all cases where one testifies as to his own age that in a sense his testimony is hearsay, but that fact does not of itself affect the competency nor the weight of that testimony.” See also Annotation, 
Competency of Witness to Testify as to His Own Age
, 39 A.L.R. 376, 376 (1925) (“The general rule, from which there seems to be little dissent, recognizes the competency of a witness to give testimony as to his own age”).

There is no question that a rational jury could have found, beyond a reasonable doubt, that defendant was 18 when he committed the murders. Accordingly, seeking the death penalty against defendant a second time would not subject him to double jeopardy, and the trial court did not err in denying defendant’s motion.

We affirm the judgment of the circuit court of Hancock County and remand the cause for further proceedings.

Affirmed and remanded
.

CHIEF JUSTICE HARRISON, dissenting:

For the reasons set forth in my partial concurrence and partial dissent in
 People v. Bull
, 185 Ill. 2d 179 (1998), the Illinois death penalty law violates the eighth and fourteenth amendments to the United States Constitution (U.S. Const., amends. VIII, XIV) and article I, section 2, of the Illinois Constitution (Ill. Const. 1970, art. I, §2). It is therefore void and unenforceable. While a majority of my colleagues continue to dispute this view, enforcement of the law has, in effect, been halted. Defendants are still being sentenced to death, but executions have ceased. An indefinite moratorium has been declared by the Governor. Since Andrew Kokoraleis’ appeal was summarily and illegally dismissed by our court in 1999 (
People v. Kokoraleis
, 189 Ill. 2d 721 (1999)), no one has actually been put to death by the State.

In an effort to address the fatal defects in Illinois’ system of capital punishment, our court recently promulgated a comprehensive set of new rules governing cases in which the State is seeking the death penalty. Although the procedures contained in the new rules are necessary for an accurate determination of innocence or guilt (
People v. Hickey
, No. 87286, slip op. at 37 (September 27, 2001) (Harrison, C.J., dissenting)), we have yet to ascertain whether the rules will be sufficient to cure the laws’ constitutional flaws. Until the efficacy of the new rules can be demonstrated, until we are certain that innocent citizens are no longer being convicted of capital offenses, imposition of the death penalty should be prohibited. Accordingly, I would reverse the order of the circuit court and preclude the State from seeking the death penalty when defendant is tried again. I therefore dissent.